CSC HOLDINGS, INC., Plaintiff,

v.

KIMTRON, INC. d/b/a Kimtronix et al., Defendants.

No. 98–7252–Civ.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 15, 1999.

**1362**

Daniel J. Lefkowitz, Patrick J. Sullivan, Wayne R. Louis, Daniel J. Lefkowitz, P.C., Jericho, NY, Philip J. Kantor, Bienstock & Clark, Miami, FL, for plaintiff.

Thomas Ralph Tatum, Brinkley McNerney Morgan Solomon & Tatum, Fort Lauderdale, FL, Anthony J. Siciliano, co-counsel, Springfield, MA, for defendants.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (DE # 48).

UPON CONSIDERATION of the Motion, responses and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### BACKGROUND

Plaintiff CSC Holdings, Inc. ("CSC") brings this action against Defendants al-leging they engaged in the illegal practice of selling pirate decoders that allow their users to intercept CSC's cable signals. CSC filed a three-count amended complaint alleging violations of 47 U.S.C. §§ 553(a)(1) and 605(e)(4), and FlaStat. § 812.15. CSC also seeks to impose a constructive trust on the revenue and profits derived by Defendants from the sale of the allegedly illegal decoders.

Defendants move to dismiss those sections of the amended complaint that allege violations under 47 U.S.C. § 605. Defendants also move to dismiss CSC's claim for a constructive trust.

### DISCUSSION

### I. Violations of 47 U.S.C. §§ 553 and 605

■ Defendants argue that because the allegations in the amended complaint involve only the use of decoding devices and theft of cable television over a coaxial cable, Defendants' actions are covered only by Section 553 and not Section 605.[1] The distinction is relevant because the penalties afforded by each section differ.

The focus of Defendants' argument is "the interplay between these two sections of the Communications Act ... [i.e.,] what specific activity each section applies to and how to reconcile any potential overlap in the provisions." *Joe Hand Promotions v. Burg's Lounge*, 2 F.Supp.2d 710, 712 (E.D.Pa.1998). The Eleventh Circuit has yet to address this issue but there has

---

1. Section 553(a) provides, in relevant part:
   No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
   ***
   For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended ... for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C.A. § 553(a)(1)–(2) (West 1998).
   Section 605 provides, in relevant part:
   No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication ... for his own benefit or for the benefit of another not entitled thereto.
47 U.S.C.A. § 605(a)–(b) (West 1998).

been much debate in the district courts and a resulting split among the circuits. *Compare United States v. Norris*, 88 F.3d 462 (7th Cir.1996) (finding that Section 605 does not apply to the allegations of theft of cable service carried over coaxial cable) *with International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.1996) (concluding that Section 605 applies to allegations of theft of cable service carried over coaxial cable).

In *Norris*, the Seventh Circuit found that cable television programming transmitted over a cable network is not covered by Section 605. *See Norris*, 88 F.3d at 469. The Court in *Norris* conducted a lengthy analysis of the history of the Communications Act of 1934 and amendments to that law through subsequent legislation. The court noted that Section 605 originally prohibited the unlawful use of "wire *or* radio communications,"[2] indicating Congress's intention that radio and wire communications were distinct. *See Norris*, 88 F.3d at 465. The Court found that Congress's intent to treat radio and wire communications as separate and distinct was clarified in 1968 when Congress passed the Omnibus Crime Control and Safe Streets Act (the "Crime Act"). *See id.* In the Crime Act, Congress amended what is now the current Section 605(a) to remove the reference to "wire" transmissions. The Crime Act, however, created a gap in cable television signal enforcement. This gap was filled, the Court believes, in 1984, when Congress passed the Cable Communications Policy Act ("Cable Act").

The Cable Act included the current Section 553, specifically prohibiting the interception of any communications offered by a cable system. The *Norris* court examined the legislative history of the Cable Act, which indicates that Section 553 "is primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service." H.R.Rep. No. 934, at 83–84, *reprinted in* 1984 U.S.C.C.A.N. 4720–21. The *Norris* court concluded that this distinction in terms used by Congress indicates that Sections 553 and 605 cover different behavior. In other words, "Where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network, specifically the manufacture and distribution of decoder boxes." *Norris*, 88 F.3d at 466.

Many district courts have followed the reasoning in *Norris*. *See, e.g., TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 735 (D.R.I. 1996) ("[I]t is clear that Congress intended § 553 to apply to the interception of cable service transmission at the point in the system that the transmission is carried by coaxial cable or wire."); *Joe Hand Promotions v. Burg's Lounge*, 2 F.Supp.2d 710, 712 (E.D.Pa.1998) ("[Section] 553 is applicable when the signal is intercepted from the coaxial cable directly and ... § 605 is applicable when the signal is intercepted directly from the satellite transmission."); *TWC Cable Partners v. Cableworks, Inc.*, 966 F.Supp. 305, 310 (D.N.J. 1997) ("[Section] 605 governs only the interception of satellite or radio transmission through the air and does not regulate the unlawful interception of communications which are sent over a cable network.").

2.  47 U.S.C.A. § 153 defines both terms:
    "Radio communication" or "communication by radio" means the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus and services ... incidental to such transmission. ***
    "Wire communication" or "communication by wire" means the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services ... incidental to such transmission.

    47 U.S.C.A. § 153(a)–(b) (West 1998).

In *Sykes,* however, the Second Circuit found that *both* § 605 and § 553 cover the interception of cable programming transmitted over a cable network. The *Sykes* court pointed to certain district court decisions rendered after the Crime Act but before passage of the Cable Act that "judicially filled the gap" created by the Crime Act, holding that § 605 covered interception of cable programming over a cable network. *See Sykes,* 75 F.3d at 130 (*citing Ciminelli v. Cablevision,* 583 F.Supp. 158 (E.D.N.Y.1984); *Cox Cable Cleveland Area, Inc. v. King,* 582 F.Supp. 376 (N.D.Ohio 1983); *Porter County Cable Co. v. Moyer,* 624 F.Supp. 1 (N.D.Ind.1983)). The *Sykes* Court also cited the following language from the legislative history of the Cable Act:

> Nothing in [§ 553] is intended to affect the applicability of existing section 605 to theft of cable service, or any other remedies available under existing law for theft of service.

*Sykes,* 75 F.3d at 132. Finally, the Second Circuit cited statements by Senator Robert Packwood concerning the legislation:

> In amending existing section 605, it is intended to leave undisturbed the case law that has developed confirming the broad reach of section 605 as a deterrent against privacy of protected communications.

*Id.*

The Second Circuit concluded that "[i]n light of this legislative history and the uniform pre–1984 judicial interpretation of § 605 as applicable to the distribution of descramblers for the interception of cable television, we conclude that § 605 continues to apply to such distribution." *Id.* at 133. Despite its conclusion, the Second Circuit noted that "the resulting interplay and overlap between §§ 553 and 605 may not demonstrate a 'convenient and inviting

sense of order,' it is for Congress, not the courts, to address any perceived resulting disorder." *Id.* (citations omitted). As with *Norris,* the reasoning in *Sykes* has been followed in district court. *See, e.g., TKR Cable Co. v. Cable City Corp.,* 1996 WL 465508 (D.N.J.).

In *Norris,* the Seventh Circuit criticized the Second Circuit's analysis, arguing that the court "pluck[ed] one sentence of § 553(a)'s legislative history out of context and assigns that sentence a meaning completely at odds with its context." *Norris,* 88 F.3d at 468. The *Norris* court then referenced other language in the legislative history that the Second Circuit had acknowledged but interpreted differently:

> The Committee intends the phrase "service offered over a cable system" to limit the applicability of [§ 553] to theft of a service from the point at which it is actually being distributed over a cable system. Thus, situations arising with respect to the reception of services which are transmitted over-the-air (or through another technology), but which are also distributed over a cable system, continue to be subject to resolution under section 605 to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system.

H.R.Rep. No. 934 at 83, *reprinted in* 1984 U.S.C.C.A.N. 4720.

Based on this language, the *Norris* court concluded that "the only plausible, consistent interpretation of these three sentences together is that Congress intended for § 605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for § 553(a) to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system." *Norris,* 88 F.3d at 469.[3] This Court is inclined to agree.

---

**3.** The Second Circuit did acknowledge that this language "might undercut [the court's] interpretation of the previous language," but nevertheless found that it was "more plausible" to consider this language "as establish-

ing § 605's exclusive jurisdiction over the transmission of a television signal by radio prior to the transmission of that same signal by cable, rather than as barring the applica-

## II. Constructive Trust

In count III of the amended complaint, CSC, pursuant to Florida law, seeks to impose a constructive trust upon the revenues and profits derived by Defendants that otherwise would have accrued to CSC. Defendants move to dismiss count III, arguing that a constructive trust is not an appropriate remedy.

■■■■■ A constructive trust is an equitable remedy. *See Mitsubishi Int'l v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir.1994); *Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022, 1025 (Fla. Dist.Ct.App.1996). The purpose of a constructive trust is to prevent unjust enrichment and restore property to its rightful owner. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1161 (Fed. Cir.1998). The imposition of a constructive trust, however, is available only when there is no adequate remedy at law. *See id.* at 1161 n. 4; *Mitsubishi*, 14 F.3d at 1518.

■■■ CSC's request for a constructive trust in this case is inappropriate. The statutes under which CSC brings its claims all provide legal remedies of damages, should CSC prevail on its claims. *See* 47 U.S.C. §§ 553(c)(3)(A), 605(e); Fla.Stat. § [812.15(4)(c)]. That CSC may be concerned that such damages would not be sufficient or may be difficult to collect are not a basis to impose a constructive trust. The Court finds the remedies provided in the statutes are adequate under the law. Accordingly, Defendants' motion to dismiss count III of the amended complaint is granted.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED IN PART. Count III of the amended complaint is DISMISSED. Pursuant to this Court's earlier Order, Defendants shall have twenty (20) days from the date of this Order to file a response to Plaintiff's Amended Complaint.

DONE AND ORDERED.

tion of § 605 to the subsequent cable retrans-
mission of the signal." *Sykes,* 75 F.3d at 132.