IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30268

_____

PROSTAR, as Broadcast Licensee of the December 6, 1997,
De La Hoya/Rivera Program,

Plaintiff-Appellant,

versus

JAMES ALLEN MASSACHI, JR., and TOBY IS DEAD, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana

_____

January 17, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit
Judges.

PER CURIAM:

This case presents us with the task of determining the
appropriate statute of limitations for an action brought under 47
U.S.C. §§ 553 and 605. As these provisions contain no express
limitations period, the district court adopted the one-year
prescriptive period for delictual actions under Louisiana law.[1]
Appellant Prostar argues that the court should have applied the
three-year limitations period articulated in the federal Copyright

_____

[1] *See* La. Civ. Code Ann. art. 3492.

Act.[2] Alternatively, Prostar requests the application of either the ten-year limitations period for personal actions under Louisiana law[3] or the three-year period applicable to actions under Article 3494 of the Louisiana Civil Code. We find that the limitations period governing actions under the Copyright Act is applicable and now reverse.

I

Prostar filed suit against Appellees Massachi and Toby Is Dead, Inc. on April 29, 1999, alleging violations of the Federal Communications Act (FCA).[4] Prostar, a Texas corporation, had purchased the commercial sales rights to various territories, including Louisiana, for transmission of the December 6, 1997, De La Hoya/Rivera boxing broadcast. Investigation by Prostar allegedly revealed that an establishment known as "Jimani Lounge and Restaurant" had improperly intercepted and exhibited the broadcast on December 6, 1997. Appellees contended that Prostar's suit was time-barred, as it was filed after the one-year limitations period set forth under Article 3492 of the Louisiana Civil Code, which

---

[2] *See* 17 U.S.C. § 507.

[3] *See* La. Civ. Code Ann. art. 3499.

[4] 48 Stat. 1064 (June 19, 1934) (codified as amended in relevant part at 47 U.S.C. §§ 553, 605). Section 553 was added to the structure of the Federal Communications Act by the Federal Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779, 2796.

governs delictual actions. The district court granted Appellees' Motion for Judgment on the Pleadings requesting dismissal.

II

Reviewing the district court's decision de novo,[5] we note that the FCA does not specify a statute of limitations for actions by licensees such as Prostar under 47 U.S.C. §§ 553 and 605[6] - "a void

[5] *See* Fed. R. Civ. P. 12(c); *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000).

[6] Neither party suggests that the two-year limitations period articulated in 47 U.S.C. § 415 applies. This limitations period is restricted to suits involving common carriers. *See* 47 U.S.C. § 415. Prostar does not - and cannot - contend that it is a common carrier. *See* 47 U.S.C. § 153(10) (defining "common carrier" or "carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not . . . be deemed a common carrier"); 47 U.S.C. § 541(c) ("Any cable system shall not be subject to regulation as a common carrier or utility by reason of providing any cable service."); *United States v. Southwestern Cable Co.*, 392 U.S. 157, 169 n.29 (1968) (finding that cable companies are not common carriers); H.R. Rep. No. 98-934, at 29, 60 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4666, 4697 (noting the general exemption of cable companies from common carrier regulations).
This Court does not find that 47 U.S.C. § 415 provides the appropriate statute of limitations for 47 U.S.C. §§ 553, 605. *See Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 962 n.3 (N.D. Ill. 2000); *Joe Hand Promotions, Inc. v. Lott*, 971 F. Supp. 1058, 1061-62 (E.D. La. 1997); *That's Entertainment of Illinois, Inc. v. Centel Videopath, Inc.*, No. 93 C 1471, 1993 U.S. Dist. LEXIS 19488, at *8-*20 (N.D. Ill. Dec. 9, 1993). *But see CSC Holdings, Inc. v. J.R.C. Products, Inc.*, 78 F. Supp. 2d 794, 802 (N.D. Ill. 1999) (assuming without deciding that section 415 is the appropriate statute of limitations for cable operator's action under 47 U.S.C. § 553). Given that the language of section 415 refers only to carriers, we infer that Congress did

which is commonplace in federal statutory law."[7] As a matter of interstitial lawmaking, this Court must adopt the appropriate statute of limitations from either state or federal sources. The Supreme Court has affirmed that state law is the "lender of first resort," and that courts generally are to adopt the closest state-law analogue.[8] However, in limited circumstances, the Court has countenanced the application of an analogous federal law where application of state law would "frustrate or interfere with the implementation of national policies . . . or be at odds with the purpose or operation of federal substantive law."[9] Under such

---

not intend this provision to apply to non-carriers. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Moreover, we find persuasive the district court's reasoning in *Centel Videopath* that the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), is distinguishable. The Court in *Lampf* applied the limitations period articulated in section 13 of the Securities Exchange Act to violations of section 10b, despite the fact that section 13 only referred to sections 11, 12(1), and 12(2) of the Act. *See id.* at 359-60. However, because a private cause of action under section 10b is a *judicial* creation, *see id.* at 359, no negative implication could be derived from section 13's failure to refer to section 10b. *See Centel Videopath,* 1993 U.S. Dist. LEXIS 19488, at *17-*18.

[7] *Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980). 28 U.S.C. § 1658 is inapposite, as the generic four-year limitations period articulated therein only applies to causes of action created after December 1, 1990. *See* 28 U.S.C. § 1658.

[8] *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995).

[9] *Id.* (citations and internal quotation marks omitted).

4

circumstances, a court must decide whether "a federal statute of limitations for another cause of action better reflect[s] the balance that Congress would have preferred between the substantive policies underlying the federal claim and the policies of repose."[10] The Supreme Court has emphasized the limited nature of this exception, stating that a federal limitations period should apply only where it "clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking."[11]

Our inquiry therefore entails the following successive levels of analysis. First, courts must "characterize the essence" of the statute in question to determine which state cause of action is most analogous.[12] Second, courts must determine whether application of the state limitations period would frustrate the policies underlying the federal law or impede its practical implementation.[13] If a state limitations period would not generate such adverse consequences, then the state limitations period applies and our

_____

[10] *Wilson v. Garcia*, 471 U.S. 261, 270 (1985).

[11] *North Star*, 515 U.S. at 35; *see Lampf*, 501 U.S. at 355-58; *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158-62, 171-72 (1983).

[12] *Staudt v. Glastron, Inc.*, 92 F.3d 312, 314 (5th Cir. 1996), *quoting Garcia*, 471 U.S. at 268.

[13] *North Star*, 515 U.S. at 35.

inquiry is concluded.[14] However, if a conflict is apparent, then courts must examine whether the federal interest in uniformity mandates the application of an analogous federal standard. This third level of analysis requires courts to examine whether federal law affords a closer analogy than state law.[15] We now proceed to examine the relevance of the preceding steps to the instant case.

A

First, we must "characterize the essence" of an action under sections 553 and 605 of the FCA.[16] The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services.[17] To that end, Congress articulated a variety of penalties and remedies to "protect the revenue of television cable companies from unauthorized reception of their transmissions."[18]

---

[14] *See id.* at 37 (noting that, where a state analogue offers a limitations period without frustrating consequences, "it is simply beside the point that even a perfectly good federal analogue exists").

[15] *See id.* at 35; *Lampf*, 501 U.S. at 355-58.

[16] *Staudt*, 92 F.3d at 314.

[17] *See Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000); H.R. Rep. No. 98-934, at 83-85 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720-22.

[18] *Boom Town Saloon*, 98 F. Supp. 2d at 961, *quoting Time/Warner Entm't/Advance-Newhouse Partnership v. Worldwide Elec., L.C.*, 50 F.

Section 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so."[19] Section 605 similarly states that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."[20] In addition, section 605 prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission.[21] Both sections contemplate civil (and criminal) enforcement measures.[22]

We recognize that courts are divided as to whether and to what extent section 605 even applies to actions by cable companies.[23] In amending the FCA, Congress in 1984 inserted language referring to

---

Supp. 2d 1288, 1293 (S.D. Fla. 1999).

[19] 47 U.S.C. § 553(a)(1).

[20] 47 U.S.C. § 605(a).

[21] *Id.*

[22] *See* 47 U.S.C. §§ 553(b)-(c), 605(e).

[23] *Compare United States v. Norris*, 88 F.3d 462 (7th Cir. 1996) (finding that section 605 does not apply to theft of cable services carried over coaxial cable, but that it does apply to interception of cable transmissions as they travel through the air), *and CSC Holdings, Inc. v. Kimtron, Inc.*, 47 F. Supp. 2d 1361 (S.D. Fla. 1999) (following *Norris*), *with International Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996) (concluding that section 605 applies to theft of cable service carried over coaxial cable).

"satellite cable programming" in section 605(b), which discusses exceptions to the prohibitions articulated in section 605(a).[24] However, Congress did not change the language in section 605(a) to expressly include cable transmissions. In contrast, Congress expressly prohibited the unlawful interception of cable communications in section 553(a). We need not resolve this dispute today, as the limitations period articulated in the Copyright Act applies to actions brought under either provision.

Section 553(a)(1) provides an array of civil and criminal remedies for unauthorized interception of cable signals. Section 553(c)(1) provides "[a]ny person aggrieved by any violation of subsection (a)(1)" a private right of action.[25] Prevailing parties may obtain injunctive relief, damages, and attorney's fees and costs.[26] Moreover, section 553 contemplates the award of either (1) actual damages suffered by the plaintiff, as well as recovery of profits gained by the person violating the Act; or (2) statutory damages of an amount not less than $250 and not more than $10,000, "as the court considers just."[27] The statute also gives courts the discretion to increase the actual or statutory damages to up to

---

[24] *See* Cable Communications Policy Act of 1984, Pub. L. No. 98-549, § 5(a), 98 Stat. 2779, 2803-04 (codified as amended at 47 U.S.C. § 605(b)).

[25] 47 U.S.C. § 553(c)(1).

[26] *See* 47 U.S.C. § 553(c)(2).

[27] *See* 47 U.S.C. § 553(c)(3)(A)(ii).

$50,000 where willful violations are present.[28] Conversely, the court may reduce damages to not less than $100 where "the violator was not aware and had no reason to believe that his acts constituted a violation of this section."[29]

Section 605 also articulates criminal and civil penalties for violations of its prohibition against the unauthorized interception and subsequent publication of transmissions. Like section 553, section 605(e)(3) provides aggrieved parties with the right to obtain injunctive relief, damages, and attorney's fees and costs.[30] The statute allows for both kinds of actual damages noted above, as well as statutory damages.[31] However, an aggrieved party can recover slightly higher statutory damages (between $1,000 and $10,000) than under section 553.[32] Finally, courts have the same discretion as under section 553 to raise or lower the damage award according to the intent and knowledge of the violator.[33] Sections 553 and 605

---

[28] *See* 47 U.S.C. § 553(c)(3)(B).

[29] 47 U.S.C. § 553(c)(3)(C).

[30] *See* 47 U.S.C. § 605(e)(3).

[31] *See* 47 U.S.C. § 605(e).

[32] *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). The statute also provides a private right of action against "[a]ny person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment" used for the decryption of satellite cable programming or that is intended to facilitate the conduct prohibited in section 605(a). 47 U.S.C. §§ 605(e)(4), 605(e)(3)(C)(i)(II).

[33] *See* 47 U.S.C. §§ 605(e)(3)(C)(ii)–(iii).

ultimately implicate similar policy objectives and provide similar standards and remedies.

B

In assessing the appropriate state-law analogue to the FCA provisions at issue, we note that the parties have offered three potential candidates from Louisiana law: (1) Article 3492 of the Louisiana Civil Code, which governs delictual actions; (2) Article 3499, outlining the standards applicable to personal actions; and (3) Article 3494, providing for "recovery of compensation." Appellees contend that the one-year limitations period governing delictual actions is the most appropriate analogue. Relying on *Joe Hand Promotions, Inc. v. Lott*,[34] Appellees assert that cable theft is analogous to the tort of conversion, which is prohibited under Article 3492.[35] Louisiana law defines conversion as "an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time."[36] Some district courts have found cable theft to be analogous to

---

[34] 971 F. Supp. 1058 (E.D. La. 1997).

[35] *See Charbonnet v. Spalitta*, 747 So. 2d 1155, 1158 (La. Ct. App. 5th Cir. 1999); La. Civ. Code Ann. art. 3492 (rev. cmts., 1983) ("The notion of delictual liability includes: intentional misconduct, negligence, abuse of right, and liability without negligence.").

[36] *Charbonnet*, 747 So. 2d at 1158.

conversion, as the defendants in such cases unlawfully "appropriate" the plaintiff's property (i.e., the cable transmission).[37] Indeed, Prostar's own complaint described Appellees' conduct as the "interception or tortious conversion" of Prostar's property.[38]

Conversion is a closer analogy to the relevant provisions of the FCA than Louisiana law governing "personal actions." Article 3499 of the Louisiana Civil Code provides a ten-year statute of limitations for personal actions, which are defined as "those that seek to enforce personal rights."[39] Personal actions include, inter alia, actions grounded on a lease; actions for the "recovery of future things;" revocatory actions; and actions sounding in quasi-contract.[40] However, Article 3499 does not apply to tort actions.[41]

---

[37] *See Kingvision Pay Per View, Ltd. v. Wilson*, 83 F. Supp. 2d 914, 919 (W.D. Tenn. 2000) (applying Tennessee's three-year statute of limitations for conversion actions); *Joe Hand*, 971 F. Supp. at 1063 (applying Louisiana's one-year period for conversion actions); *Kingvision Pay Per View, Ltd. v. Bowers*, 36 F. Supp. 2d 915, 918 (D. Kan. 1998) (applying Kansas's two-year limitations period for conversion actions).

[38] Plaintiff's Verified Complaint at 2. *See Northcott Exploration Co. v. W.R. Grace & Co.*, 430 So. 2d 1077 (La. App. 3d Cir. 1983) (noting that the character of the action given by the plaintiff in his pleadings determines the applicable prescription).

[39] A.N. Yiannopoulos, 2 *Louisiana Civil Law Treatise: Property* § 242 (3d ed. 1991).

[40] *See id.; Burns v. Sabine River Auth.*, 736 So. 2d 977 (La. App. 3d Cir. 1999).

[41] *See Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989).

Prostar can not find refuge in quasi-contract, as quasi-contractual obligation is based on the principles of unjust enrichment.[42] Unjust enrichment requires, inter alia, a showing that the plaintiff has no other remedy at law. Where a conversion action is available, as in the instant case, a claim of unjust enrichment is not viable.[43]

The claims contemplated by Article 3494 are also less analogous to the instant action than the tort of conversion. Article 3494 provides a three-year prescriptive period for actions for the "recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board."[44] However, as the Louisiana Supreme Court has observed, Article 3494 "merely provides exceptions to the general rule stated in Article 3499 that a personal action

---

[42] *See Minyard v. Curtis Prods., Inc.*, 205 So. 2d 422 (La. 1967).

[43] *See Central Oil & Supply Corp. v. Wilson Oil Co.,* 511 So. 2d 19, 21 (La. App. 3d Cir. 1987). Prostar also argues that its claim is "[a] revindicatory action brought to assert or protect the right of ownership in movable property." *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 778 (5th Cir. 1997). As this Court has noted, a revindicatory action for the recovery of movable property is imprescriptible. *See id.* However, a revindicatory action abates when the movable is no longer in the defendant's possession. *See Johnson v. Hardy*, 756 So. 2d 328, 332 (La. App. 1st Cir. 1999). Prostar is suing for damages, not for the recovery of the broadcast. Appellees can not be viewed as remaining in "possession" of the broadcast.

[44] La. Civ. Code Ann. art. 3494(1). This provision also encompasses actions for arrearages of rent and annuities, as well as actions on money lent. *See* La. Civ. Code Ann. art. 3494(2)-(3).

12

prescribes in ten years."[45] We have already noted that Prostar's claim is not analogous to a personal action. A fortiori, Prostar's claim does not qualify as an exception to the statute governing personal actions. Perusal of the kinds of actions listed in Article 3494 confirms our conclusion that its provisions are inapposite to the case at bar.

C

Having determined that the tort of conversion provides the closest state-law analogue to Prostar's claim, we must examine whether or not Article 3492 of the Louisiana Civil Code is "at odds with" the FCA's "purpose or operation, or frustrate[s] or interfere[s] with the intent behind it."[46] Prostar contends, first, that application of a one-year statute of limitations would not provide victims of cable theft with enough time to investigate, uncover, and file claims against violators. Prostar refers to the "ever evolving technological developments which enable signal pirates to 'cloak' their theft or misuse such transmissions." Prostar argues that adoption of the "relatively short" period of one year would actually encourage piracy by making it easier for malefactors to evade detection. While we are sympathetic to the

---

[45] *Grabert v. Iberia Parish Sch. Bd.*, 638 So. 2d 645, 647 (La. 1994).

[46] *North Star Steel Co. v. Thomas*, 515 U.S. 29, 35 (1995) (internal quotation marks omitted).

cable industry's concerns in this regard, we are not prepared to say that one year is too short as a matter of law for investigation and detection of violations. Prostar presents no evidence or references to support its assertions that one year is insufficient. Indeed, it concedes that a "plaintiff can readily identify that an establishment exhibited a broadcast without paying the appropriate license fee." Prostar states that the more difficult task is identifying the entity or individuals involved. Again, we can not say that one year is insufficient.[47]

Prostar argues that the need for national uniformity in enforcing the FCA requires the application of a single standard. As Prostar observes, the cable industry is a distinctly national (and international) enterprise. In the 1984 House Report accompanying passage of amendments to the FCA, the House committee noted that the issues facing the cable industry were national in scope and underscored the need for a correspondingly national enforcement regime.[48]

---

[47] The instant case is therefore distinguishable from *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), in which the Supreme Court held that state-law limitations periods of thirty and ninety days were too short for actions brought under section 301 of the Labor Management Relations Act and the fair representation doctrine.

[48] *See, e.g.*, H.R. Rep. No. 98-934 (1984), at 22, 83-85, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4659, 4720-22.

The posture of the instant case affirms the "multistate nature" of actions brought under the FCA.[49] Prostar is a Texas corporation suing for alleged signal piracy conducted in a Louisiana establishment. More generally, cable broadcasts are routinely conducted on a national and international scale. Cable piracy consequently differs from many of the cases where courts have applied state-law limitations periods, as these typically involved isolated events, such as a plant closing or "mass layoff" at a single site of employment;[50] the termination of an employee;[51] or a wrongful arrest.[52]

We find that application of Louisiana conversion law to cable piracy claims brought under 47 U.S.C. § 553 and 605 would undermine the implementation of the FCA.[53] The application of state conversion

---

[49] *See Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertson*, 501 U.S. 350, 357 (1991).

[50] *See North Star*, 515 U.S. at 36-37.

[51] *See Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992).

[52] *See Wilson v. Garcia*, 471 U.S. 261, 276-79 (1985).

[53] We recognize that the Supreme Court has on one occasion responded to the need for uniformity by eschewing a federal standard and mandating the application of a single state-law cause of action. For example, in *Wilson v. Garcia*, the Supreme Court held that each state's personal injury law would furnish the appropriate statute of limitations for claims brought under 42 U.S.C. § 1983. *See Garcia*, 471 U.S. at 276. However, that case involved a civil rights claim - i.e., a wrongful arrest and alleged battery - that was local in character. For such actions, the Court felt that "uniformity within each state" was sufficient. *Id.* at 275. The multistate character of the activity in question distinguishes the instant case from *Garcia*.

15

law in each of the fifty states would result in widely varying limitations periods.[54] As Prostar notes, cable companies engage in multistate activities and would consequently be required to "make fifty separate decisions" in their efforts to investigate and pursue cable piracy. A single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA.

D

We conclude that the Copyright Act provides the appropriate federal-law analogue to Prostar's FCA claims. Indeed, the Copyright Act provides a "closer fit" than conversion.[55] The Copyright Act and the FCA both protect proprietary rights in the context of cable transmissions. The Copyright Act prohibits infringement by "[a]nyone who violates any of the exclusive rights of the copyright owner."[56] Infringement encompasses the unauthorized performance or

---

[54] *Compare, e.g.*, La. Civ. Code Ann. art. 3492 (articulating a one-year prescriptive period), *with* R.I. Gen. Laws § 9-1-13 (2000) (imposing a ten-year statute of limitations).

[55] *See Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertson*, 501 U.S. 350, 357 (1991). The Supreme Court has noted that "commonality of purpose and similarity of elements will be relevant" to determining whether federal law is more analogous than state law. *Id.* at 358.

[56] 17 U.S.C. § 501(a). To succeed on a claim for direct copyright infringement, a plaintiff must show: (1) ownership of the copyrighted material, and (2) copying by the defendant. *See Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).

16

display of motion pictures and other audiovisual works.[57] Moreover, the statute explicitly prohibits infringement in the context of secondary transmissions by cable systems.[58] The unauthorized access and retransmission of cable broadcasting, which the FCA prohibits, does not actually deprive the licensee of its license. Whereas conversion requires the wrongful deprivation of one's possession of property,[59] the Copyright Act provides for liability when mere copying occurs, rendering it a more appropriate analogue to the FCA.[60]

In addition, both statutes have similar remedial structures. For instance, the FCA and the Copyright Act allow for statutory and actual damages.[61] Both acts give the court discretion to increase

---

[57] *See* 17 U.S.C. § 106(4)-(5). *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 532 (5th Cir. 1994) (noting that copying of copyrighted computer program violates the Copyright Act); *National Cable Television Ass'n, Inc. v. Broadcast Music, Inc.*, 772 F. Supp. 614, 651 (D.D.C. 1991) (holding that transmission by cable programmers of programming containing copyrighted music constitutes public performance of that music, creating liability for infringement).

[58] *See* 17 U.S.C. § 501(c)-(e).

[59] *See* La. Civ. Code Ann. art. 3492; *Charbonnet v. Spalitta*, 747 So. 2d 1155, 1158 (La. Ct. App. 5th Cir. 1999).

[60] This Court has stated that copyright infringement by the unauthorized distribution of copies is not "stealing, converting, or taking by fraud." *United States v. Smith*, 686 F.2d 234, 242 (5th Cir. 1982). We have also recognized that taping copies of a copyrighted broadcast "does not implicate a tangible item. . . . . nothing was removed from someone's possession." *Id.* at 243.

[61] *See* 17 U.S.C. § 504(b), (c); 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i).

17

the statutory damage award for willful violations.[62] Finally, both acts also provide for the award of costs and attorney's fees.[63]

We refuse to interpret Congress's failure to articulate a statute of limitations for 47 U.S.C. §§ 553 and 605 as an inexorable command that courts apply state law. Although courts are frequently justified in assuming that Congress "intend[ed] by its silence that we borrow state law,"[64] silence may also indicate that Congress did not give "any express consideration to the problem of limitations periods."[65] Furthermore, Congress's failure to subsequently amend the statute to include a limitations period may only "betoken[] unawareness, preoccupation, or paralysis."[66] Inertia is endemic to the legislative process, rendering congressional inaction a problematic interpretive guide.[67] More fundamentally, if

---

[62] *See* 17 U.S.C. § 504(c)(2); 47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(ii).

[63] *See* 17 U.S.C. § 505; 47 U.S.C. §§ 553(c)(2)(C), 605(e)(B)(iii).

[64] *North Star Steel Co. v. Thomas*, 515 U.S. 29, 35 (1995) (internal quotation marks omitted).

[65] *DelCostello*, 462 U.S. at 158 n.12. *See also International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 709 (1966) (White, J., dissenting) ("[T]he silence of Congress is not to be read as automatically putting an imprimatur on state law.").

[66] *Brown v. Gardner*, 513 U.S. 115, 121-22 (1994), *quoting Zuber v. Allen*, 396 U.S. 168, 185 n.21 (1969); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989) ("Congressional inaction cannot amend a duly enacted statute.").

[67] *See* William N. Eskridge, Jr., *Interpreting Legislative Inaction*, 87 Mich. L. Rev. 67, 98-104 (1988) (discussing the causes

this Court were to always find dispositive Congress's failure to include a statute of limitations, we would apply a state statute of limitations in every case. Such an outcome would run counter to the Supreme Court's clear mandate that courts apply federal law in limited circumstances.[68] Because we find that such circumstances are present in the instant case, we reject the reasoning adopted in *Joe Hand Promotions, Inc. v. Lott*[69] and hold that the three-year limitations period articulated in the Copyright Act governs Prostar's FCA claims.[70] As Prostar's claims were not time-barred, we hereby REVERSE the district court's judgment and REMAND for further proceedings.

REVERSED.

---

and characteristics of legislative inertia).

[68] *See Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 964 (N.D. Ill. 2000).

[69] 971 F. Supp. 1058 (E.D. La. 1997).

[70] This holding is consonant with *Boom Town Saloon, Inc.*, 98 F. Supp. 2d at 964; *Entertainment by J&J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F. Supp. 2d 775, 779-80 (S.D. Tex. 2000); and *That's Entertainment of Illinois, Inc. v. Centel Videopath, Inc.*, No. 93 C 1471, 1993 U.S. Dist. LEXIS 19488, at *19-*20 (N.D. Ill. Dec. 9, 1993).