

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2004

# Kingvision v. 898 Belmont Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-1770

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Kingvision v. 898 Belmont Inc" (2004). *2004 Decisions*. Paper 739.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/739

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No: 02-1770

KINGVISION PAY-PER-VIEW,
CORP., LTD.,

Appellant
v.

898 BELMONT, INC.,
d/b/a EL TORO BAR;
BERHANU DEGIFE

Appeal from the United States District
Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-02970)
District Judge: Honorable Berle M.
Schiller

Argued on March 4, 2003

Before: ROTH, BARRY and FUENTES
CIRCUIT JUDGES

(Filed: April 27, 2004)

Francine R. Strauss, Esquire (Argued)
11917 Gainsborough Road
Potomac, MD 20854

Bradley H. Trushin, Esquire

Marcus W. Corwin, P.A.
7777 Glades Road, Suite 208
Boca Raton, FL 33424

Counsel for Appellants

Donald M. Moser, Esquire (Argued)
Washington West Building
235 South 8th Street
Philadelphia, PA 19106-3519

Counsel for Appellees

OPINION

**ROTH**, Circuit Judge:

Once again, we must determine what statute of limitations to apply when a federal statute does not specify a limitations period. In this case, involving the Federal Communications Act (FCA), KingVision claims that defendants exhibited a closed circuit telecast through the use of an illegal decoding device. The District Court applied the two year limitations period of the Pennsylvania cable piracy statute instead of the three year limitations period of the Copyright Act. We hold that the two year state limitations period does apply to KingVision's FCA claims because the Pennsylvania piracy statute is directly analogous to § 553 of the FCA and neither

1

the "practicalities of litigation" nor federal policy or law are frustrated by such application. *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 34-35 (1995); *Reed v. Transp. Union*, 488 U.S. 319, 327 (1989). Accordingly, we will affirm the decision of the District Court granting defendants' Motion for Judgment on the Pleadings and dismissing all claims against defendants.

## I. Facts and Procedural History

Plaintiff KingVision, a licensee of sports programming, sued defendants 898 Belmont, Inc., d/b/a the El Toro Bar, and Berhanu Degife, its owner and operator, in the District Court for the Eastern District of Pennsylvania under 47 U.S.C. §§ 553 (unauthorized reception of cable service) and 605 (unauthorized publication or use of communications), the "piracy statutes" of the FCA, as amended by the Cable Communications Policy Act of 1984. It is uncontested that on March 13, 1999, without KingVision's authorization, the El Toro Bar intercepted and broadcast the Evander Holyfield/Lennox Lewis championship boxing match and "associated undercard bouts" to its patrons. It is also uncontested that KingVision did not provide defendants with the decoding equipment or the satellite coordinates necessary to receive the signal, nor did KingVision receive a sublicense fee or revenue from El Toro Bar for patron admissions to the broadcast. KingVision wrote to the El Toro Bar about the unauthorized broadcast in April 1999 but failed to bring suit until June 2001. Defendants filed an Answer and a Motion for Judgment on the Pleadings on the ground that the Complaint was filed after the expiration of the two year state limitations period applicable to the Pennsylvania cable piracy statute, 18 Pa. Con. Stat. § 910, as specified in 42 Pa. Cons. Stat. § 5524(7) for actions not otherwise subject to a specific limitations period.

The District Court applied the two year statute of limitations of § 5524(7) and dismissed KingVision's claims as time-barred. *KingVision Pay-Per-View, Ltd. v. 898 Belmont, Inc.*, No. 01-2970, 2002 U.S. Dist. LEXIS 2275, at *8 (E.D. Pa. Feb. 13, 2002). On February 24, 2002, KingVision filed a timely Motion for Reconsideration, arguing that the Copyright Act more closely parallels the piracy sections of the FCA, so that the limitations period of the Copyright Act should be applied instead of the state limitations period. KingVision's motion was denied on March 8, 2002, and this appeal followed.

## III. Jurisdiction and Standard of Review

The District Court had jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, as it is a civil action arising under the laws of the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291, because the District Court's February 14, 2002, order is final and appealable.

We review *de novo* the District Court's dismissal of the case on statute of limitations grounds. *See Lake v. Arnold*, 233 F.3d 360, 365 (3d Cir. 2000)

2

## IV. Discussion

Determining the statute of limitations period for activity governed by a federal statute is a question of federal law. Nevertheless, as recognized by the Supreme Court in *North Star Steel Co. v. Thomas*, 515 U.S. 29 (1995), when a federal statute fails to provide a statute of limitations, a court should look to analogous state statutes. The Court stated, "our practice has left no doubt about the lender of first resort. Since 1830, 'state statutes have repeatedly supplied the periods of limitations for federal causes of action' when the federal legislation made no provision." *Id.* at 34 (citing *Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703-704 (1966)). The rule is that "courts look to the state statute 'most closely analogous' to the federal Act in need." *Id.*; *Reed v. Transp. Union*, 488 U.S. 319, 323 (1989); *DelCostello v. Teamsters*, 462 U.S. 151, 158 (1983).[1] The reason for this judicially-created rule is that Congress has an "appropriate" and "realistic" expectation that, given long-standing practice, courts will look to analogous state statutes of limitations for federal laws that do not provide them. *North Star*, 515 U.S. at 34, 37 (Scalia, J., concurring). Thus, while courts are not *required* to choose a state statute of limitations period, they generally choose a state limitations period "as a matter of interstitial fashioning of remedial details under the respective substantive federal statutes." *DelCostello*, 462 U.S. at 160.

In *North Star*, the Supreme Court notes two exceptions to this rule. First, 28 U.S.C. § 1658 provides a general, four-year limitations period for federal statutes passed after December 1, 1990, that do not contain their own limitations period. *Id.* at 34 n.*. Section 1658 is not at issue here, however, since the FCA was passed in 1934, and the Cable Communications Policy Act amendments were passed in 1984.

Second, a court may turn to a limitations period provided within an analogous federal statute when the state limitations periods would "'frustrate or interfere with the implementation of national policies'. . . or be 'at odds with the purpose or operation of federal substantive law.'" *Northstar*, 515 U.S. at 34 (internal citations omitted). This second exception is very narrow; "reference to federal law is the exception, and we decline to follow a state limitations period only when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for

---

[1] *Lampf v. Gilbertson*, 501 U.S. 350 (1991) articulates a slightly different version of the rule for choosing limitations periods when federal statutes fail to specify them. In *Lampf*, the Court considered the need for uniformity, the "geographic character" of the claim, and the "closest fit," provided statutory purpose and elements. *Id.* at 357-58. This expression of the rule is not followed by the Court in *North Star.*

interstitial lawmaking." *Id.* at 35 (internal quotations omitted).

In other words, if there is a parallel state statute, there is no reason to explore federal law, unless the state limitations period impedes the implementation of national policies, is at odds with the purpose or operation of federal substantive law, or is demanded by the practicalities of litigation. *See, e.g., Reed*, 488 U.S. at 327 ("In light of the analogy between § 101(a)(2) and personal injury actions, and of the lack of any conflict between the practicalities of § 101(a)(2) litigation and state personal injury limitations periods, we are bound to borrow state personal injury statutes absent some compelling demonstration that 'the federal policies at stake' in § 101(a)(2) actions make a federal limitations period 'a significantly more appropriate vehicle for interstitial lawmaking.'") (quoting *DelCostello*, 462 U.S. at 172). However, as the Court explained in *DelCostello*:

> In some circumstances . . . state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. *In those instances*, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

462 U.S. at 161 (emphasis added).

As we see then, under *North Star, Reed*, and *DelCostello*, if there is an analogous state limitations period, absent any impediment of implementation of national policies if that state period is applied, courts are not required to examine federal limitations periods.

Following the standard established in *DelCostello,* the Supreme Court has applied state limitations periods to a variety of claims, including claims under the Worker Adjustment and Retraining Notification Act (WARN), *see North Star*, 515 U.S. at 33-37; the Labor-Management and Reporting and Disclosure Act (LMRDA), *see Reed*, 488 U.S. at 323-34; and § 1983, *see Wilson v. Garcia*, 471 U.S. 261, 266-80 (1985). *DelCostello* itself, however, is an example of the type of action in which a *federal* limitations period is called for. There, the Court applied a federal limitations period to a hybrid § 301/fair representation claim arising under the National Labor Relations Act (NLRA), 462 U.S. at 151, 158-72. Again, in a Racketeer Influenced and Corrupt Organizations Act (RICO) claim, the Court applied a federal limitations period in *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987).

Our review of *DelCostello* and *Malley-Duff* demonstrates that the Supreme Court examines statute of limitations queries based on the type of claim presented rather than on a case-by-case basis. NLRA and RICO cases are two categories of the types of federal statutes excepted from the general application of state limitations periods.

The justification for applying the exception in the *DelCostello* 301/fair representation hybrid claim is evident. While the § 301 component of the claim is a straight contract claim for which there were close state analogs, the fair representation claim, which is a challenge to private settlements under the collective bargaining agreement, was without close analog in state law. 462 U.S. at 165. It was possible to apply the state arbitration limitations periods to the hybrid claim, but they are extremely short – only 10 to 90 days – and would allow insufficient time for plaintiffs to complete necessary tasks relating to the fair representation claim, *i.e.*, evaluating the adequacy of union counsel, obtaining private counsel, and framing the suit. *Id.* at 166. In addition, the state arbitration statutes assume the vacation of an award, but the arbitration in *DelCostello* did not resolve the employee's claim against the union because the union was acting as the employee's representative (and union counsel as employee's counsel). *Id.* at 167. In the alternative, applying the longer six year state contract limitations period to the hybrid claim would have interfered with the "rapid final resolution of labor disputes favored by federal law." *Id.* at 168. The practicalities of litigating a hybrid claim, as in *DelCostello*, distinguish that type of case from the present one.

The RICO civil enforcement action in *Malley-Duff* is a broader exception to the state limitations rule. The Supreme Court has articulated three points to consider in determining whether, for uniformity purposes, a court should adopt a federal, rather than a state, limitations period. First, a general preference for uniformity, even if to avoid forum shopping, is an insufficient reason to apply the limitations period of the closest federal analog. *See, e.g., North Star*, 515 U.S. at 36. The Court noted, in North Star, that "the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal action . . . . But these are just the costs of the rule itself . . .." *Id.*

Second, the desire to unify the limitations periods of federal laws with similar purposes is not a sufficient reason to adopt federal limitations periods. For instance, in *Reed*, the Court commented:

> Respondents argue that the same federal labor policies that led us in *DelCostello* to borrow the NLRA § 10(b) statute of limitations for hybrid § 301/fair representation claims likewise require that we borrow § 10(b) for LMRDA § 101(a)(2) actions. This argument lacks merit. It fails to take seriously our admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies.

5

488 U.S. at 327

Third, there is a difference between uniformity in construing the substantive elements of a statute in order to characterize a claim for statute of limitations purposes and the next step of determining what limitations periods to adopt for a particular type of claim. For example, in *Wilson*, the Supreme Court held that § 1983 claims should be characterized uniformly as state tort actions. The Court then determined, however, that the length of the limitations period is to be governed by state tort law. 471 U.S. at 268-271, 275-280. The Court stressed that uniformity was an issue only in the characterization of the claim, stating "the statute [§ 1983] is fairly construed [as a tort claim] as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach." *Id*. at 275. Thus, while the Court embraced uniformity in recognizing § 1983 claims as tort claims for statute of limitations purposes, it did not find that the limitations periods themselves needed to be uniform. It is only after this characterization of the type of claim has been completed that the *DelCostello/North Star/Reed* examination is to be done to determine if there are no analogous state statutes or if the state limitations periods frustrate the practicalities of litigation or are at odds with federal purpose or law.

We see then this process taking place in *Malley-Duff*, the RICO case in which the Court held that a four year limitations period for Clayton Act civil enforcement actions applies to RICO actions and rejected the state "catch-all" statute of limitations choice. 483 U.S. at 155-56. The Court is very careful in *Malley-Duff* to distinguish its narrow holding with regard to these RICO actions from other limitations period cases. The Court explained that uniformity is a greater concern for RICO civil actions, since by statute such actions require both a nexus to interstate or foreign commerce and a pattern of racketeering. *Id.* at 153; 18 U.S.C. § 1962(b), (c). Racketeering itself often involves interstate transactions, since it may include any of nine state law felonies and over 25 federal statutes. *Id.* at 149 (citing *A.J. Cunningham Packing Corp. v. Congress Fin. Corp.*, 792 F.2d 330, 337 (3d Cir. 1986) (Sloviter, J., concurring)); 18 U.S.C. § 1961.

The Court's desire to limit its holding in *Malley-Duff* is made clear in *North Star*. The *North Star* court distinguished *Malley-Duff* on the ground that the event in *North Star* was a single incident, "a plant closing," a "mass layoff at a single site of employment," and it was "relatively simple and narrow in its scope," 515 U.S. at 37 (internal quotations omitted). The RICO claim in *Malley-Duff*, on the other hand, is acknowledged as *requiring* a nexus to interstate or foreign commerce as a jurisdictional element as well as an allegation of a pattern of racketeering, which is likely to include

interstate transactions. *Malley-Duff,* 483 U.S. at 153-54. KingVision is correct that cable piracy, like RICO claims, may involve wide-spread and multiple wrongful actions such as theft, tortious interference with prospective advantage, misrepresentation, civil conspiracy, and unjust enrichment, but multiple, interstate claims are not required as an element of the cause of action under §§ 553 or 605 of the Cable Act, nor are they at stake in this case.

Although the Supreme Court has not yet been faced with the issue of the limitations period to apply in FCA/Cable Act piracy cases, the issue has arisen in federal district courts and has been addressed by the Fifth Circuit Court of Appeals. As the District Court noted in this case, federal district courts have applied the federal limitations period under the Copyright Act to FCA claims when the only state law from which to borrow a limitations period was a general conversion law. We agree with the District Court that "these cases do not predict the proper outcome of the case at bar involving a state statute narrowly crafted to deter cable piracy." 2002 U.S. Dist. LEXIS 2275 at *8. It is not, moreover, a requirement that a district court, in picking an analogous state limitations period, determine that every state has such an analogous statutory scheme – but only that the state whose law is being applied has such a one.[2]

KingVision, however, relies on the Fifth Circuit Court of Appeals' decision in *Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001) to argue for the application of the federal limitations period of the Copyright Act. We decline, however, to follow the holding in *Prostar*. Although the facts parallel those of the present case, *Prostar* is distinguishable on the ground that the applicable state law at issue, one of general conversion, is not as close an analog to the FCA as the Pennsylvania piracy statutes.[3] Further, the *Prostar* court appears to conflate, or at least fails to distinguish between, the need for uniformity in construing the type of statute for limitations purposes and uniformity in the length of the limitations periods adopted. *See Wilson*, 471 U.S. at 268-271, 275-280. The *Prostar* court states that the FCA requires uniform enforcement via the application of a federal limitations period because "issues facing the cable industry [are] national in scope." 239 F.3d at 676 (citing H.R. Rep. No. 98-934, at 22 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4659,

---

[2] In his concurrence in *North Star*, Justice Scalia notes that the "closer

analogy" rule first announced in *DelCostello* is "not only erroneous but unworkable" because it can result in state limitations applying in some states and the federal statute in others. 515 U.S. at 37. We, however, will leave the resolution of this dilemma to the Supreme Court.

[3] We take judicial notice that KingVision identifies New York and Mississippi as other states without state piracy analogs.

4720-22). This conclusion, however, simply does not follow. The national concerns of the cable industry are relevant only insofar as they are embodied in the FCA. As a threshold matter, they are used to characterize the claim for which a statute of limitations period is then to be applied. The violations of the Cable Act, however, are particular acts which are pursued in the locations where they occur – as was done in the present case. The localized violations – even if multiple – are very different from the interstate activity involved in RICO claims.

Following *North Star*, we turn our attention then to the Pennsylvania piracy statutes. Their provisions mirror those of the FCA. Section 3926 of the Pennsylvania statute, like 47 U.S.C. § 605, makes punishable by fine or imprisonment the theft of certain wire services.[4] It allows an aggrieved service provider "equitable or declaratory relief, compensatory and punitive damages . . . costs . . . and attorney fees." 18 Pa. Cons. Stat. § 3926(g). Section 910 is the state companion statute to § 3926 and is the state statute addressed by the District Court. It focuses upon the use of devices for theft of telecommunications services, mirroring 47 U.S.C. § 553.[5] KingVision

disputes the applicability of § 910, as it deals with theft via a "device," and it is not clear that a "device" was used in the present case to intercept the telecast. Nevertheless, even though we do not know the method of interception used at the El Toro Bar, we can assume reception of the Holyfield-Lewis fight was not the product of mere serendipity. Further, while KingVision is correct that § 910 speaks about *manufacture* of illegal telecommunications devices and § 553 about improper interception of a communication, § 910(e) defines "manufacture of an unlawful telecommunication device" as using a device to receive, transmit, or decrypt a telecommunications service.

The District Court is correct that § 910 provides "a remarkably close analog to the Cable Act [§ 553]." 2002 U.S. LEXIS 2275 at *6. As the court described, § 910, like 47 U.S.C. § 553:

> (1) specifically prohibits use of an unlawful telecommunications device to decode "transmissions, signals or services over any cable television . . . ." 18 Pa.

---

[4] Section 3926 pertains to wire and radio services, and § 605 to telecommunication and cable services.

[5] KingVision alleged violation of both §§ 605 and 553 of the Cable Act. Section 605, however, does not apply in

the present case. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001) (holding that "a cable television descrambler does not facilitate the interception of 'communications by radio' and therefore the statutory damages available under § 605 do not apply here.")

Cons. Stat. § 910(e) (compare with 47 U.S.C. § 553(a)).

(2) provides for criminal sanctions; prior convictions under the Cable Act are considered in grading an offense. 18 Pa. Cons. Stat. § 910(b)(5) (compare with 47 U.S.C. § 553(b)).

(3) provides for civil statutory sanctions of $250 to $10,000 per violation absent evidence that the acts were willful and for purposes of personal financial gain or commercial advantage, in which case the court may increase the award of statutory damages by no more than $50,000 per violation. 18 Pa. Cons. Stat. § 910(d.1)(2)-(3) (compare with 47 U.S.C. § 553(c), especially part (c)(3)(A)(ii), (c)(3)(B)).

(4) provides for injunctive relief, statutory or actual damages, attorney's fees, and costs in almost identical language as the FCA. 18 Pa. Cons. Stat. § 910(d.1)(1-3), (d)(2)(iv) (compare with 47 U.S.C. § 553 (c)(2)-(c)(3)(B)).

Consequently, we conclude that the District Court did not err in holding that, "because Section 910 is parallel in substance and form to the Cable Act, it is the 'closer fit' the Supreme Court contemplated as the appropriate source from which to borrow a statute of limitations, precluding KingVision's proposed adoption of the Copyright Act's three-year period." 2002 U.S. LEXIS 2275 at *8 (internal citations omitted).

Furthermore, this case does not warrant the exception of applying a federal limitations period where a state limitations period "frustrates the practicalities of litigation" or otherwise interferes with federal policy or law. KingVision knew of the alleged violation over two years prior to commencing suit. In such a straightforward and relatively simple suit, it is difficult to imagine why a two year limitations period would be inadequate. *See, e.g., North Star*, 515 U.S. at 36 (holding that a two year limitations period in a fairly straightforward WARN claim was insufficient to "frustrate the practicalities of litigation"). The Supreme Court has turned to federal law for limitations periods when a state limitations period was too short to accommodate the special circumstances of litigation, such as investigation. *See DelCostello*, 462 U.S. at 166 (holding that a state limitations period of generally between 10 and 90 days was insufficient to bring a LMRA § 301/fair representation hybrid action).

9

There are no such special considerations relevant to bringing CFA claims that would be frustrated by a two-year limitations period. *Cf. Reed*, 488 U.S. at 327-328n.4 (finding in the LMRDA context that there was no indication that it should take more than two years to identify an injury and hire an attorney).

Additionally, the two year state limitations period does not frustrate the purpose or implementation of the FCA or its Cable Act amendments. The overall purpose of the FCA is to "regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available . . . to all the people of the United States . . . a rapid efficient . . . communication service with adequate facilities at reasonable charges . . .. " 47 U.S.C. § 151. More specifically, Congress passed §§ 553 and 605 to prevent unauthorized interception of cable transmissions, including interception through unauthorized use of decoding devices. These policies and laws are not impeded in the present case where KingVision has had up to two years to bring suit in order to deter theft and keep the costs of services down. There is no evidence that the practicalities of litigation require more time.

### Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court, dismissing KingVision's Complaint.