02-09-404-CV
















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 2-09-404-CV

 

 


 
 
 J&J SPORTS PRODUCTIONS, INC.
 
 
                                            APPELLANT
 
 


 

V.

 


 
 
 1) JWJ MANAGEMENT, INC., INDIVIDUALLY
 AND D/B/A PLAYMATES; AND 2) JOE WAYNE FEEMSTER, INDIVIDUALLY AND D/B/A
 PLAYMATES
 
 
                                            
 
 APPELLEES
 
 


 

 

------------

 

FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

------------

 

OPINION

 

------------

          Appellant J&J Sports Productions,
Inc. appeals from the trial court’s judgment dismissing its claims against
Appellees JWJ Management, Inc. (individually and d/b/a Playmates) (JWJ) and Joe
Wayne Feemster (individually and d/b/a/ Playmates) (Feemster).  In one point, J&J Sports argues that the
trial court erred by concluding that the two-year statute of limitations from
section 16.003 of the Texas Civil Practice and Remedies Code[1]
applies to its claims.  Because we hold
that the two-year statute of limitations does apply, we affirm.

I.
Background

          J&J Sports was authorized to
sub-license the live telecast of a boxing event held on May 28, 2005.  On May 28, 2008, J&J Sports filed suit
against JWJ and Feemster for cable piracy under sections 553 and 605 of the
Federal Communications Act of 1934 (FCA).[2]  In its petition, J&J Sports alleged that
JWJ and Feemster had shown a closed-circuit telecast of the event in their
commercial establishment without first obtaining the rights to show the event
from J&J Sports.

          JWJ and Feemster filed a cross-motion
for summary judgment on the ground that the piracy claims were time-barred by
the two-year statute of limitations provided by civil practice and remedies
code section 16.003(a).[3]  J&J Sports argued in response that the
trial court should follow the Fifth Circuit’s holding in Prostar v. Massachi
and apply the three-year statute of limitations found in the federal Copyright
Act.[4]  The trial court granted JWJ and Feemster’s
motion, and J&J Sports now appeals.

II.  Standard of Review

          We review a summary judgment de novo.[5]  A defendant is entitled to summary judgment
on an affirmative defense if the defendant conclusively proves all the elements
of the affirmative defense.[6]  Limitations is an affirmative defense.[7]

III.  Discussion

Applicable
Law

          In J&J Sports’s sole issue, it
argues that the trial court erred by concluding that the two-year limitations
period in section 16.003 applies to claims brought under the FCA, specifically
47 U.S.C. §§ 553 and 605.  Congress has
provided a four-year limitations period for civil actions arising under federal
statutes enacted after December 1, 1990.[8]  For federal statutes enacted prior to that
time that do not specifically provide an applicable limitations period, the
general rule is to “‘borrow’ the most closely analogous state limitations
period.”[9]  Courts have also, though more rarely,
borrowed an analogous federal limitations period in certain circumstances.[10]

          The United States Supreme Court has
discussed at length the analysis courts should use in determining the
applicable statute of limitations for a federal statute that does not expressly
provide an applicable limitations period. 
In Agency Holding Corp. v. Malley-Duff & Associates, the
Court considered the appropriate statute of limitations for civil enforcement
actions under the Racketeer Influenced and Corrupt Organizations Act (RICO).[11]  The Court began by noting that in the past,
it had “generally concluded that Congress intended that the courts apply the
most closely analogous statute of limitations under state law,” but that courts
are not always required to apply a state statute of limitations whenever a
federal statute is silent on the question of limitations.[12]  The Court then articulated the initial
inquiry in determining the appropriate limitations period: “whether all claims
arising out of the federal statute ‘should be characterized in the same way, or
whether they should be evaluated differently depending upon the varying factual
circumstances and legal theories presented in each individual case[,]’”[13]
that is, whether one uniform limitations period should be applied to all claims
that arise out of the statute.  Once the
court has made this determination, the court must decide whether a federal or
state limitations period should apply to such claims.[14]  The federal Rules of Decisions Act[15]
generally requires the application of a state limitations statute, but in some
limited circumstances, “‘state statutes of limitations can be unsatisfactory
vehicles for the enforcement of federal law,’” and in those circumstances, “‘it
may be inappropriate to conclude that Congress would choose to adopt state
rules at odds with the purpose or operation of federal substantive law.’”[16]

          The Court stated that “the mere fact
that state law fails to provide a perfect analogy to the federal cause of
action is never itself sufficient to justify the use of a federal statute of
limitations.”[17]  But it may be appropriate to borrow a
limitations period from another federal statute “when a rule from elsewhere in
federal law clearly provides a closer analogy than available state
statutes, and when the federal policies at stake and the practicalities of
litigation make that rule a significantly more appropriate vehicle for
interstitial lawmaking.”[18]

          Due to the nature of RICO claims, the
federal courts had been inconsistent in how they approached selecting a statute
of limitations to apply.[19]  To be liable under § 1962 of RICO, a person has
to have engaged in a “pattern of racketeering,” meaning at least two acts of
racketeering activity.[20]  The term “racketeering activity” encompasses
numerous and diverse topics, across many areas of law, including nine state law
felonies and over twenty-five federal statutes.[21]  The types of acts constituting “racketeering
activity” range from actions such as mail fraud and embezzlement to acts
“generally associated with professional criminals such as arson, bribery,
theft[,] and political corruption.”[22]  Thus, in trying to determine which state
limitations period applies, a court could analogize a RICO claim to numerous
causes of action with a multiplicity of applicable limitations periods.[23]  The Court therefore needed to set a uniform
statute of limitations for RICO claims to avoid “intolerable ‘uncertainty and
time-consuming litigation.’”[24]

          After determining that it needed to
set one uniform limitations period to apply to all claims arising out of RICO,
the Court ultimately concluded that the applicable limitations period should
come from the federal Clayton Act[25]
rather than from state law.[26]  The Court placed particular importance on the
“similarities in purpose and structure between RICO and the Clayton Act” and
“the clear legislative intent to pattern RICO’s civil enforcement provision on
the Clayton Act,” which the Court stated “strongly counsel[ed] in favor of”
applying the Clayton Act’s limitations period.[27]

          The Court remarked that “[t]his [was]
especially true given the lack of any satisfactory state law analogue to RICO.”[28]  Unlike, for example, a claim under 42 U.S.C.
§ 1983—the predicate acts of which “plainly sound[] in tort,” making claims
under that statute amenable to the application of a state’s statute of
limitations for tort claims—the predicate acts that give rise to a racketeering
claim under RICO “cannot be reduced to a single generic characterization.”[29]

          The Court also observed that because
of the multi-jurisdictional nature of RICO cases, the practicalities of
litigation provided an additional compelling reason for applying a federal
statute of limitations.[30]  Not only could a single claim be subject to
multiple limitations periods within a jurisdiction, but because RICO
cases are commonly based on interstate transactions, any one RICO claim could
also be governed by the statute of limitations for multiple states.[31]  In summary, because a claim under RICO could
encompass numerous acts that would be subject to different statutes of
limitations within a jurisdiction, the Court needed to establish a uniform
limitations period to apply to all RICO claims.[32]  Because a claim could be based on predicate
acts that occurred in multiple jurisdictions, and because the statute itself
was clearly patterned on a federal statute, the limitations period for that
federal statute should apply to RICO claims.[33] 

          In Lampf, Pleva, Lipkind, Prupis
& Petigrow v. Gilbertson, the Court addressed the applicable statute of
limitations for a private suit brought under § 10(b) of the Securities
Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.[34]  The Court reiterated that borrowing a
limitations period from a federal statute is a closely-circumscribed exception
to the general rule of borrowing from state law.[35]  From its previous cases, the Court distilled
a three-step, hierarchical inquiry for determining the appropriate limitations
period.[36]  First, a court must consider the need to
establish one uniform limitations period to apply to the federal cause of
action.[37]  Does the federal cause of action “encompass
numerous and diverse topics and subtopics . . . such that a single state
limitations period may not be consistently applied within a jurisdiction”?[38]  If so, “federal interests in predictability
and judicial economy counsel the adoption of one source, or class of sources,
for borrowing purposes.”[39]

          Next, a court considers whether to use
a state or federal source, giving particular consideration to the geographical
character of the claim—that is, if the claim is multistate in nature.[40]  The concern is that if a plaintiff’s claim
could be brought in more than one state, each with a different limitations
period, this could give rise to forum shopping and would “‘virtually guarantee
complex and expensive litigation over what should be a straightforward
matter.’”[41]  We note that the Court expressed concern
about whether a single claim could possibly be subjected to statutes of
limitations in multiple states; the Court made no mention of concern about
whether a plaintiff who pursues claims against different defendants in separate
lawsuits might be subjected to different statutes of limitations based on where
those lawsuits are filed.

          As a final consideration, a court
looks to see if a federal limitations period has a “closer fit” than a state
law limitations period.[42]  Even if the multistate nature of a claim
points toward borrowing a federal statute, the court still must look to see if
the analogous federal source truly affords a closer fit with the cause
of action at issue than does any available state-law source.[43]

          The Court once again considered the
issue of borrowing in North Star Steel Co. v. Thomas.[44]  In that case, the Court determined the
applicable statute of limitations for claims under the federal Worker
Adjustment and Retraining Notification Act (WARN).[45]  The Court again noted that a statute of
limitations should be borrowed from a federal source, rather than a state
source, “when the state limitations periods with any claim of relevance would
‘frustrate or interfere with the implementation of national policies,’” or be
“at odds with the purpose or operation of federal substantive law,”[46]
but that borrowing from a federal source is a “‘a closely circumscribed . .
.  [and] narrow exception to the general
rule’” of borrowing from state law.[47]  The Court held that the claims at issue
“[fell] squarely inside the rule, not the exception.”[48]

          Although the defendants in North
Star Steel argued that litigation under WARN presented a risk of forum
shopping, the Court declined to adopt a uniform federal rule for all WARN
claims.  The Court acknowledged that “the
practice of adopting state statutes of limitations for federal causes of action
can result in different limitations periods in different States for the same
federal action” and that “some plaintiffs will canvass the variations and shop
around for a forum.”[49]  But, the Court observed, “[T]hese are just
the costs of the rule itself, and nothing about WARN makes them exorbitant.”[50]  That is, the fact that a federal statute
could be subjected to one limitations period in one state but a different
limitations period in another state does not by itself justify adopting a
uniform federal limitations rule for a federal cause of action.

          The Court acknowledged that it had
previously adopted a uniform federal rule for RICO claims and that in doing so,
it was influenced by the “practicalities of litigation” of RICO claims.[51]  But, the Court pointed out, claims under WARN
are based on an act or acts at a single site and, unlike RICO violations, “do
not ‘commonly involve interstate transactions.’”[52]  The Court concluded by holding that because
WARN did not share the “multistate nature” of RICO and is 

so relatively simple and narrow in its scope, that “no
[comparable] practicalities of litigation compel us to search beyond state law
for a more analogous statute of limitations[.]” 
Since, then, a state counterpart provides a limitations period without
frustrating consequences, it is simply beside the point that even a perfectly
good federal analogue exists.[53]

          Although the Supreme Court has not yet
determined the applicable limitations period for claims under the FCA, the
Third, Fifth, and Ninth Circuits have reached the issue.  The Fifth Circuit held that the limitations period
from the federal Copyright Act applies to civil actions under the FCA.[54]  In Prostar, the Fifth Circuit
considered whether to apply a Louisiana limitations period to claims brought
under 47 U.S.C. §§ 553 and 605.[55]  The court concluded that the closest analogue
under Louisiana law to the plaintiff’s cable piracy claim was the tort of
conversion.[56]  The court declined, however, to apply
Louisiana’s one-year limitations period for conversion claims.  Instead, emphasizing the need for national
uniformity in enforcing the FCA, the court held that the application of
Louisiana conversion law would undermine the implementation of the FCA because
“[t]he application of state conversion law in each of the fifty states would
result in widely varying limitations periods,” which would require national
cable companies to “‘make fifty separate decisions’ in their efforts to
investigate and pursue cable policy.”[57]  Thus, the court appeared to interpret the
“uniformity” consideration set out by the Supreme Court as a consideration of
whether implementation of the cable piracy statutes’ policies and the
practicalities of litigation required a limitations period that was uniform across
jurisdictions, rather than merely uniform within a jurisdiction.  The court concluded that a single federal
standard should apply to cable piracy claims and that the federal Copyright Act
provides an appropriate federal law analogue to such claims.[58]  Accordingly, the court applied the Copyright
Act’s limitations period of three years to the cable piracy claims.[59]

          Both the Third and Ninth Circuits
reached a different conclusion than the Fifth Circuit did in Prostar and
held that the applicable limitations period should be one borrowed from state
law.  In Kingvision Pay-Per-View,
Corp. v. 898 Belmont, Inc.,[60]
the Third Circuit noted that Pennsylvania, the state in which the claims were
brought, has a cable piracy statute similar to the federal statute; that
statute has a two-year statute of limitations.[61]  Although the plaintiff in that case argued
that the three-year limitations period of the federal Copyright Act should
apply, the Third Circuit determined that no special considerations relevant to
bringing FCA claims would be frustrated by a two-year limitations period.[62]  The court observed that “[t]he overall
purpose of the FCA is to “‘regulat[e] interstate and foreign commerce in
communication by wire and radio so as to make available . . . to all the people
of the United States . . . a rapid efficient . . . communication service with
adequate facilities at reasonable charges[,]’” and that the specific provisions
of §§ 553 and 605 were passed “to prevent unauthorized interception of cable
transmissions, including interception through unauthorized use of decoding
devices.”[63]  Because there was no evidence that the
practicalities of litigation under those sections required a longer statute of
limitations, and because the application of the state law limitations period
did not frustrate the purpose or implementation of the FCA, the court found no
reason to apply a longer limitations period.[64]

          In DirecTV, Inc. v. Webb,[65]
the Ninth Circuit determined the statute of limitations for a violation of 47
U.S.C. § 605.  The court pointed out that
California has a piracy statute “remarkably similar to § 605 in purpose and
structure.”[66]  In contrast to the Fifth Circuit’s analysis
in Prostar, the court held that the consideration of a need for
uniformity does not refer to “a litigant’s preference for a single limitations
period in multiple lawsuits across multiple jurisdictions.”[67]  Nor does the consideration relate to whether
the borrowed limitations period should come from federal rather than state law.[68]  Rather, the issue of uniformity arises when
the federal cause of action is so complex that “a single state limitations
period may not be consistently applied within a [single] jurisdiction.”[69]  The court also noted that, in that case, the
piracy claims against the defendant were not multistate in nature in that they
did not stem from predicate acts spanning multiple jurisdictions.[70]  And furthermore, the court held,
“[G]eographic considerations do not counsel for the adoption of a federal
limitations period less analogous than a state counterpart.”[71]  Thus, the court concluded that the statute of
limitations applicable to the California cable piracy statute should apply to
the plaintiff’s claims.[72]

Analysis

          We now turn to the claims in this
case.  J&J Sports argues that this
court should follow Prostar. 
Precedent of the Fifth Circuit, though persuasive, is not binding on
this court.[73]  We therefore conduct our own analysis to
determine what limitations period applies.[74]

          J&J Sports contends that Texas
does not have a state statute analogous to the FCA’s statutory scheme
protecting against unauthorized reception of cable transmissions.  J&J Sports is incorrect; unlike
Louisiana, Texas has a closer analogue to the federal cable piracy statutes
than common law conversion.  As with the
federal provisions at issue here, Texas provides for both criminal and civil
liability when a person uses a device to obtain cable or satellite services
without authorization.  Under section
31.12 of the penal code, a person commits an offense of theft of or tampering
with multichannel video or information services if the person, without
authorization, intentionally or knowingly uses an unauthorized access device to
obtain services from a multichannel video or information services provider.[75]  The term “access device” means “an access
device, connection, or device wholly or partly designed to make intelligible an
encrypted, encoded, scrambled, or other nonstandard signal carried by a
multichannel video or information services provider.”[76]  The term “multichannel video or information
services provider” means “a licensed cable television system, video dialtone
system, multichannel multipoint distribution services system, direct broadcast
satellite system, or other system providing video or information services that
are distributed by cable, wire, radio frequency, or other media.”[77]  With respect to civil liability for such
actions, the Texas Theft Liability Act (TTLA) makes certain theft offenses
subject to civil penalties as well.[78]  Section 134.002 specifically provides for a
civil cause of action against a person who commits an offense under section
31.12.[79]  As with 47 U.S.C. §§ 553 and 605, under the
TTLA, a plaintiff may recover both actual damages and statutory damages for a
violation of section 31.12.[80]  Thus, Texas has a state law analogue that
parallels the federal cable piracy statutory scheme.  We must now determine whether we should apply
the Texas limitations period applicable to section 134.002 to J&J Sports’s
federal claims or whether we should instead borrow from a federal law analogue.

          We agree with the reasoning of the
Third and Ninth Circuits.  The federal
Copyright Act does not truly afford a closer fit to the federal cable piracy
statute than the Texas cable piracy statutory scheme.  And the practicalities of litigation under
the cable piracy statute do not make the application of the federal Copyright
Act (or any other federal law) significantly more appropriate.[81]  The cable piracy statutory scheme does not
address a range of topics and subtopics. 
It does not base liability on multiple acts, each with its own
limitations period, creating confusion as to which limitations period should be
applied.  And the predicate act or acts
that subject a person to liability do not occur across multiple
jurisdictions.  Instead, the piracy
claims are based on “a localized violation in a single jurisdiction.”[82]

          Furthermore, borrowing Texas’s two-year
statute of limitations does not frustrate either the purpose or the
implementation of the FCA’s cable piracy provisions.  We agree with the Third Circuit that having a
two-year statute of limitations does not impede the FCA’s purpose of preventing
the unauthorized interception of cable transmissions, including interception
through unauthorized use of decoding devices.[83]  Because the federal policies at stake are not
frustrated by applying a two-year statute of limitations, and because the
practicalities of litigation under the FCA’s cable piracy provisions do not
counsel against borrowing Texas’s two-year statute of limitations, we decline
to follow Prostar.

          J&J Sports argues that cable
piracy “clearly implicates several areas of the law, such [as] fraud, theft of
services, conspiracy to breach contract, unjust enrichment, or interference
with economic advantage.”  But whereas
cable piracy could possibly be compared to any of these causes of action,
proving a claim under the cable piracy statutory scheme does not require
establishing those other claims.  The
fact that those other causes of action have varying statutes of limitations is
therefore irrelevant to our analysis.[84]

          J&J Sports also argues that cable
signals and satellite communications are multistate operations.  It points out that it is a California
corporation with an exclusive license with a Nevada-based promoter and that the
defendants in this case were in Texas.  J&J
Sports misconstrues the geographic consideration requirement set out by the Supreme
Court.[85]  The “multistate nature” of a claim does not
refer to whether the parties are in different jurisdictions.  The consideration relates to whether the
predicate acts of the defendant occurred in different jurisdictions.[86]  J&J Sports’s claim is based, as most
cable piracy claims will be, on an act at a single site.  And the Supreme Court has pointed out that
even if the claim is multistate in nature, before borrowing a federal
limitations period, a court must determine that an analogous federal source truly
affords a closer fit with the cause of action at issue than does any available
state-law source.[87]  The federal Copyright Act does not afford a
closer fit to the federal cable piracy statutes than does the Texas cable
piracy statutes.

          Section 134.002 of the civil practice
and remedies code, which incorporates section 31.12 of the penal code, is the
Texas statute most closely analogous to the cable piracy provisions of the
FCA.  Accordingly, we hold that the
statute of limitations applicable to section 134.002 applies to the federal
causes of action asserted here.  Under
section 16.003(a) of the civil practice and remedies code, except where
otherwise provided, a two-year limitations period applies to a claim for
trespass to or the taking of personal property.[88]  Because section 134.002 addresses theft of
personal (intangible) property, section 16.003(a) applies to section 134.002
claims.  Accordingly, we hold that a
two-year statute of limitations applies here.

          J&J Sports brought its claims more
than two years after the alleged unauthorized interception.  The trial court therefore did not err by
granting JWJ and Feemster’s cross-motion for summary judgment based on the
application of the two-year statute of limitations in section 16.003(a).[89]  We overrule J&J Sports’s sole issue.




 

IV.  Conclusion

          Having overruled J&J Sports’s sole
issue, we affirm the trial court’s summary judgment.

 

 

                                                                             
 
 
 
 
 
 
 
 
 LEE ANN DAUPHINOT

                                                                             
 
 
 JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MEIER, JJ.

 

DELIVERED: 
September
 23, 2010











[1]Tex. Civ. Prac.
& Rem. Code Ann. § 16.003 (Vernon Supp. 2010).





[2]47 U.S.C.A. § 553
(West 2001) (“No person shall intercept or receive or assist in intercepting or
receiving any communications service offered over a cable system, unless
specifically authorized to do so by a cable operator or as may otherwise be
specifically authorized by law.”); id. § 605 (West 2001) (“No person not
being authorized by the sender shall intercept any radio communication and
divulge or publish the existence, contents, substance, purport, effect, or
meaning of such intercepted communication to any person.”).





[3]See Tex. Civ. Prac.
& Rem. Code Ann. § 16.003(a).





[4]See Prostar v.
Massachi, 239 F.3d 669, 678 (5th Cir. 2001); see also 17 U.S.C.A. §§
101–1332 (West 2005 & Supp. 2010).





[5]Mann Frankfort
Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).





[6]Chau v. Riddle, 254 S.W.3d 453,
455 (Tex. 2008); see Tex. R. Civ. P. 166a(b), (c).





[7]Tex. R. Civ. P.
94; In re United Servs. Auto. Ass’n, 307 S.W.3d 299, 308 (Tex. 2010).





[8]28 U.S.C.A. § 1658
(West 2006); Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382,
124 S. Ct. 1836, 1845 (2004) (holding that a cause of action “arises under” an
act after December 1, 1990, “if the plaintiff’s claim against the defendant was
made possible by a post-1990 enactment”).





[9]Graham County Soil
& Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409,
414–15, 125 S. Ct. 2444, 2448 (2005).





[10]Id.





[11]483 U.S. 143, 144,
107 S. Ct. 2759, 2761 (1987); see also 18 U.S.C.A. §§ 1961–1968 (West
2000 & Supp. 2010).





[12]Agency Holding, 483 U.S. at
146, 107 S. Ct. at 2762.





[13]Id. at 147, 107 S.
Ct. at 2762.





[14]Id.





[15]28 U.S.C.A. § 1652
(West 2006).





[16]Agency Holding, 483 U.S. at 147,
107 S. Ct. at 2762–63 (quoting DelCostello v. Teamsters, 462 U.S. 151,
161, 103 S. Ct. 2281, 2289 (1983)).





[17]Id., 107 S. Ct. at
2763.





[18]Id. at 148, 107 S.
Ct. at 2763 (quoting DelCostello, 462 U.S. at 171–72, 103 S. Ct. at
2294) (emphasis added).





[19]Id.





[20]18 U.S.C.A. §
1962.





[21]Agency Holding, 483 U.S. at
149–50, 107 S. Ct. at 2763–64.





[22]Id.; see also 18
U.S.C.A. § 1962.





[23]Agency Holding, 483 U.S. at 149–50,
107 S. Ct. at 2763–64.





[24]Id. at 150, 107 S.
Ct. at 2764 (quoting Wilson v. Garcia, 471 U.S. 261, 272, 105 S. Ct.
1938, 1945 (1985)).





[25]15 U.S.C.A. § 15
(West 2009).





[26]Agency Holding, 483 U.S. at 150,
107 S. Ct. at 2764.





[27]Id. at 150–52, 107 S.
Ct. at 2764–65.





[28]Id. at 152, 107 S. Ct.
at 2765.





[29]Id.





[30]Id. at 153–54, 107 S.
Ct. at 2766.





[31]Id.





[32]Id.





[33]Id.





[34]501 U.S. 350, 352,
111 S. Ct. 2773, 2776 (1991); see 15 U.S.C.A. § 78j(b) (West 2009); 17
CFR § 240.10b-5 (1990).





[35]Lampf, 501 U.S. at 356,
111 S. Ct. at 2778.





[36]Id. at 356, 111 S.
Ct. at 2778–79.





[37]Id. at 357, 111 S.
Ct. at 2779.





[38]Id.





[39]Id.





[40]Id.





[41]Id. (quoting Agency
Holding, 483 U.S. at 154, 107 S. Ct. at 2766).





[42]Id.





[43]Id. at 357–58, 111 S.
Ct. at 2779.





[44]515 U.S. 29, 115
S. Ct. 1927 (1995).





[45]Id. at 31, 115 S. Ct.
at 1929; see 29 U.S.C.A. §§ 2101–2109 (West 2009).





[46]North Star Steel, 515 U.S. at 34, 115 S. Ct. at 1931 (quoting DelCostello, 462 U.S. at 161,
103 S. Ct. at 2289, and Occidental Life Ins. Co. of Cal. v. EEOC, 432
U.S. 355, 367, 97 S. Ct. 2447, 2455 (1977)).





[47]Id. at 34, 115 S. Ct.
at 1930 (quoting Reed v. United Transp. Union, 488 U.S. 319, 324, 109 S.
Ct. 621, 625 (1989)).





[48]Id. at 35, 115 S. Ct.
at 1931.





[49]Id. at 36, 115 S. Ct.
at 1931–32.





[50]Id. at 36, 115 S. Ct. at 1932.





[51]Id.





[52]Id. at 36–37, 115 S.
Ct. at 1932.





[53]Id. at 37, 115 S. Ct. at 1932 (citations omitted).





[54]Prostar, 239 F.3d at 677.





[55]Id. at 671.





[56]Id. at 675.





[57]Id. at 676–77.





[58]Id. at 677.





[59]Id. at 678.





[60]366 F.3d 217 (3rd
Cir. 2004).





[61]Id. at 219.





[62]Id. at 225.





[63]Id. (quoting 47
U.S.C. § 151).





[64]Id.





[65]545 F.3d 837 (9th
Cir. 2008).





[66]Id. at 848 (citing Lampf,
501 U.S. at 358, 111 S. Ct. at 2779 (instructing that “commonality of purpose
and similarity of elements” are relevant considerations when selecting a
statute of limitations period to apply)).





[67]Id. at 850–51.





[68]Id. at 851.





[69]Id. (citing Lampf,
501 U.S. at 357, 111 S. Ct. at 2779).





[70]Id.





[71]Id.





[72]Id. at 848.





[73]Penrod Drilling
Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993).





[74]See Fielding, 289 S.W.3d at
848 (reviewing summary judgment de novo).





[75]Tex. Penal Code
Ann. § 31.12(a)(4) (Vernon 2003).





[76]Id. § 31.12(b)(1).





[77]Id. § 31.12(b)(3).





[78]See Tex. Civ. Prac.
& Rem. Code Ann. §§ 134.001–.005 (Vernon 2005).





[79]Id. § 134.002.





[80]See id. § 134.005(a)(1); see
also 47 U.S.C.A. §§ 553(c)(3), 605(e)(3)(C).





[81]See Lampf, 501 U.S. at 356,
111 S. Ct. at 2778 (noting that a court should apply a federal rule only when
federal policies at stake and practicalities of litigation make that rule
significantly more appropriate than borrowing a limitations period from an
analogous state law).





[82]See DirecTV, Inc., 545 F.3d at 851.





[83]See Kingvision
Pay-Per-View, Corp., 366 F.3d at 225.





[84]Cf. Agency Holding,
483 U.S. at 149–50, 107 S. Ct. at 2763–64 (discussing RICO, which lists more
than thirty acts or offenses and makes the commission of any two a violation of
RICO).





[85]See Prostar, 239 F.3d at 676
(determining that Prostar’s claim illustrated the “multistate nature” of FCA
actions in that Prostar was a Texas corporation suing for signal piracy
conducted in Louisiana).





[86]See North Star
Steel, 515 U.S. at 37, 115 S. Ct. at 1932 (noting that WARN’s obligations are
triggered by activities that, unlike RICO violations, “do not ‘commonly involve
interstate transactions’”).





[87]Lampf, 501 U.S. at
357–58, 111 S. Ct. at 2779.





[88]Tex. Civ. Prac.
& Rem. Code Ann. § 16.003.





[89]See Chau, 254
S.W.3d at 455.