

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-09-404-CV

J&J SPORTS PRODUCTIONS, INC.                                    APPELLANT

V.

1) JWJ MANAGEMENT, INC.,                                    APPELLEES
INDIVIDUALLY AND D/B/A
PLAYMATES; AND 2) JOE WAYNE
FEEMSTER, INDIVIDUALLY AND
D/B/A PLAYMATES

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Appellant J&J Sports Productions, Inc. appeals from the trial court's judgment dismissing its claims against Appellees JWJ Management, Inc. (individually and d/b/a Playmates) (JWJ) and Joe Wayne Feemster (individually and d/b/a/ Playmates) (Feemster). In one point, J&J Sports argues that the trial court erred by concluding that the two-year statute of limitations from section

16.003 of the Texas Civil Practice and Remedies Code[1] applies to its claims. Because we hold that the two-year statute of limitations does apply, we affirm.

## I. Background

J&J Sports was authorized to sub-license the live telecast of a boxing event held on May 28, 2005. On May 28, 2008, J&J Sports filed suit against JWJ and Feemster for cable piracy under sections 553 and 605 of the Federal Communications Act of 1934 (FCA).[2] In its petition, J&J Sports alleged that JWJ and Feemster had shown a closed-circuit telecast of the event in their commercial establishment without first obtaining the rights to show the event from J&J Sports.

JWJ and Feemster filed a cross-motion for summary judgment on the ground that the piracy claims were time-barred by the two-year statute of limitations provided by civil practice and remedies code section 16.003(a).[3] J&J Sports argued in response that the trial court should follow the Fifth Circuit's holding in *Prostar v. Massachi* and apply the three-year statute of limitations

---

[1]Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2010).

[2]47 U.S.C.A. § 553 (West 2001) ("No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."); *id.* § 605 (West 2001) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.").

[3]*See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

found in the federal Copyright Act.[4]  The trial court granted JWJ and Feemster's motion, and J&J Sports now appeals.

## II.  Standard of Review

We review a summary judgment de novo.[5]  A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[6]  Limitations is an affirmative defense.[7]

## III.  Discussion

*Applicable Law*

In J&J Sports's sole issue, it argues that the trial court erred by concluding that the two-year limitations period in section 16.003 applies to claims brought under the FCA, specifically 47 U.S.C. §§ 553 and 605.  Congress has provided a four-year limitations period for civil actions arising under federal statutes enacted after December 1, 1990.[8]  For federal statutes enacted prior to that time that do

---

[4]*See Prostar v. Massachi*, 239 F.3d 669, 678 (5th Cir. 2001); *see also* 17 U.S.C.A. §§ 101–1332 (West 2005 & Supp. 2010).

[5]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[6]*Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c).

[7]Tex. R. Civ. P. 94; *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010).

[8]28 U.S.C.A. § 1658 (West 2006); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S. Ct. 1836, 1845 (2004) (holding that a cause of action

not specifically provide an applicable limitations period, the general rule is to "'borrow' the most closely analogous state limitations period."[9] Courts have also, though more rarely, borrowed an analogous federal limitations period in certain circumstances.[10]

The United States Supreme Court has discussed at length the analysis courts should use in determining the applicable statute of limitations for a federal statute that does not expressly provide an applicable limitations period. In *Agency Holding Corp. v. Malley-Duff & Associates*, the Court considered the appropriate statute of limitations for civil enforcement actions under the Racketeer Influenced and Corrupt Organizations Act (RICO).[11] The Court began by noting that in the past, it had "generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law," but that courts are not always required to apply a state statute of limitations whenever a federal statute is silent on the question of limitations.[12] The Court then articulated the initial inquiry in determining the appropriate limitations period:

"arises under" an act after December 1, 1990, "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment").

[9]*Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414–15, 125 S. Ct. 2444, 2448 (2005).

[10]*Id.*

[11]483 U.S. 143, 144, 107 S. Ct. 2759, 2761 (1987); *see also* 18 U.S.C.A. §§ 1961–1968 (West 2000 & Supp. 2010).

[12]*Agency Holding*, 483 U.S. at 146, 107 S. Ct. at 2762.

"whether all claims arising out of the federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case[,]'[13] that is, whether one uniform limitations period should be applied to all claims that arise out of the statute. Once the court has made this determination, the court must decide whether a federal or state limitations period should apply to such claims.[14] The federal Rules of Decisions Act[15] generally requires the application of a state limitations statute, but in some limited circumstances, '"state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law,"' and in those circumstances, '"it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law."'[16]

The Court stated that "the mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations."[17] But it may be appropriate to borrow a limitations period from another federal statute "when a rule from elsewhere in

---

[13]*Id.* at 147, 107 S. Ct. at 2762.

[14]*Id.*

[15]28 U.S.C.A. § 1652 (West 2006).

[16]*Agency Holding*, 483 U.S. at 147, 107 S. Ct. at 2762–63 (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 161, 103 S. Ct. 2281, 2289 (1983)).

[17]*Id.*, 107 S. Ct. at 2763.

5

federal law *clearly* provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a *significantly* more appropriate vehicle for interstitial lawmaking."[18]

Due to the nature of RICO claims, the federal courts had been inconsistent in how they approached selecting a statute of limitations to apply.[19] To be liable under § 1962 of RICO, a person has to have engaged in a "pattern of racketeering," meaning at least two acts of racketeering activity.[20] The term "racketeering activity" encompasses numerous and diverse topics, across many areas of law, including nine state law felonies and over twenty-five federal statutes.[21] The types of acts constituting "racketeering activity" range from actions such as mail fraud and embezzlement to acts "generally associated with professional criminals such as arson, bribery, theft[,] and political corruption."[22] Thus, in trying to determine which state limitations period applies, a court could analogize a RICO claim to numerous causes of action with a multiplicity of applicable limitations periods.[23] The Court therefore needed to set a uniform

---

[18]*Id.* at 148, 107 S. Ct. at 2763 (quoting *DelCostello*, 462 U.S. at 171–72, 103 S. Ct. at 2294) (emphasis added).

[19]*Id.*

[20]18 U.S.C.A. § 1962.

[21]*Agency Holding*, 483 U.S. at 149–50, 107 S. Ct. at 2763–64.

[22]*Id.*; *see also* 18 U.S.C.A. § 1962.

[23]*Agency Holding*, 483 U.S. at 149–50, 107 S. Ct. at 2763–64.

statute of limitations for RICO claims to avoid "intolerable 'uncertainty and time-consuming litigation.'"[24]

After determining that it needed to set one uniform limitations period to apply to all claims arising out of RICO, the Court ultimately concluded that the applicable limitations period should come from the federal Clayton Act[25] rather than from state law.[26] The Court placed particular importance on the "similarities in purpose and structure between RICO and the Clayton Act" and "the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act," which the Court stated "strongly counsel[ed] in favor of" applying the Clayton Act's limitations period.[27]

The Court remarked that "[t]his [was] especially true given the lack of any satisfactory state law analogue to RICO."[28] Unlike, for example, a claim under 42 U.S.C. § 1983—the predicate acts of which "plainly sound[] in tort," making claims under that statute amenable to the application of a state's statute of

---

[24]*Id.* at 150, 107 S. Ct. at 2764 (quoting *Wilson v. Garcia*, 471 U.S. 261, 272, 105 S. Ct. 1938, 1945 (1985)).

[25]15 U.S.C.A. § 15 (West 2009).

[26]*Agency Holding*, 483 U.S. at 150, 107 S. Ct. at 2764.

[27]*Id.* at 150–52, 107 S. Ct. at 2764–65.

[28]*Id.* at 152, 107 S. Ct. at 2765.

7

limitations for tort claims—the predicate acts that give rise to a racketeering claim under RICO "cannot be reduced to a single generic characterization."[29]

The Court also observed that because of the multi-jurisdictional nature of RICO cases, the practicalities of litigation provided an additional compelling reason for applying a federal statute of limitations.[30] Not only could a single claim be subject to multiple limitations periods *within* a jurisdiction, but because RICO cases are commonly based on interstate transactions, any one RICO claim could also be governed by the statute of limitations for multiple states.[31] In summary, because a claim under RICO could encompass numerous acts that would be subject to different statutes of limitations within a jurisdiction, the Court needed to establish a uniform limitations period to apply to all RICO claims.[32] Because a claim could be based on predicate acts that occurred in multiple jurisdictions, and because the statute itself was clearly patterned on a federal statute, the limitations period for that federal statute should apply to RICO claims.[33]

In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, the Court addressed the applicable statute of limitations for a private suit brought under

---

[29]*Id.*

[30]*Id.* at 153–54, 107 S. Ct. at 2766.

[31]*Id.*

[32]*Id.*

[33]*Id.*

8

§ 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.[34]   The Court reiterated that borrowing a limitations period from a federal statute is a closely-circumscribed exception to the general rule of borrowing from state law.[35]   From its previous cases, the Court distilled a three-step, hierarchical inquiry for determining the appropriate limitations period.[36]   First, a court must consider the need to establish one uniform limitations period to apply to the federal cause of action.[37]   Does the federal cause of action "encompass numerous and diverse topics and subtopics . . . such that a single state limitations period may not be consistently applied within a jurisdiction"?[38]   If so, "federal interests in predictability and judicial economy counsel the adoption of one source, or class of sources, for borrowing purposes."[39]

Next, a court considers whether to use a state or federal source, giving particular consideration to the geographical character of the claim—that is, if the

---

[34]501 U.S. 350, 352, 111 S. Ct. 2773, 2776 (1991); *see* 15 U.S.C.A. § 78j(b) (West 2009); 17 CFR § 240.10b-5 (1990).

[35]*Lampf*, 501 U.S. at 356, 111 S. Ct. at 2778.

[36]*Id.* at 356, 111 S. Ct. at 2778–79.

[37]*Id.* at 357, 111 S. Ct. at 2779.

[38]*Id.*

[39]*Id.*

claim is multistate in nature.[40]  The concern is that if a plaintiff's claim could be brought in more than one state, each with a different limitations period, this could give rise to forum shopping and would "'virtually guarantee complex and expensive litigation over what should be a straightforward matter.'"[41]  We note that the Court expressed concern about whether a single claim could possibly be subjected to statutes of limitations in multiple states; the Court made no mention of concern about whether a plaintiff who pursues claims against different defendants in separate lawsuits might be subjected to different statutes of limitations based on where those lawsuits are filed.

As a final consideration, a court looks to see if a federal limitations period has a "closer fit" than a state law limitations period.[42]  Even if the multistate nature of a claim points toward borrowing a federal statute, the court still must look to see if the analogous federal source *truly* affords a closer fit with the cause of action at issue than does any available state-law source.[43]

The Court once again considered the issue of borrowing in *North Star Steel Co. v. Thomas*.[44]  In that case, the Court determined the applicable statute of limitations for claims under the federal Worker Adjustment and Retraining

---

[40]*Id.*

[41]*Id.* (quoting *Agency Holding*, 483 U.S. at 154, 107 S. Ct. at 2766).

[42]*Id.*

[43]*Id.* at 357–58, 111 S. Ct. at 2779.

[44]515 U.S. 29, 115 S. Ct. 1927 (1995).

Notification Act (WARN).[45] The Court again noted that a statute of limitations should be borrowed from a federal source, rather than a state source, "when the state limitations periods with any claim of relevance would 'frustrate or interfere with the implementation of national policies,'" or be "at odds with the purpose or operation of federal substantive law,"[46] but that borrowing from a federal source is a "'a closely circumscribed . . . [and] narrow exception to the general rule'" of borrowing from state law.[47] The Court held that the claims at issue "[fell] squarely inside the rule, not the exception."[48]

Although the defendants in *North Star Steel* argued that litigation under WARN presented a risk of forum shopping, the Court declined to adopt a uniform federal rule for all WARN claims. The Court acknowledged that "the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal action" and that "some plaintiffs will canvass the variations and shop around for a forum."[49] But, the Court observed, "[T]hese are just the costs of the rule itself, and nothing

---

[45]*Id.* at 31, 115 S. Ct. at 1929; *see* 29 U.S.C.A. §§ 2101–2109 (West 2009).

[46]*North Star Steel*, 515 U.S. at 34, 115 S. Ct. at 1931 (quoting *DelCostello*, 462 U.S. at 161, 103 S. Ct. at 2289, and *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367, 97 S. Ct. 2447, 2455 (1977)).

[47]*Id.* at 34, 115 S. Ct. at 1930 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324, 109 S. Ct. 621, 625 (1989)).

[48]*Id.* at 35, 115 S. Ct. at 1931.

[49]*Id.* at 36, 115 S. Ct. at 1931–32.

11

about WARN makes them exorbitant."[50]   That is, the fact that a federal statute could be subjected to one limitations period in one state but a different limitations period in another state does not by itself justify adopting a uniform federal limitations rule for a federal cause of action.

The Court acknowledged that it had previously adopted a uniform federal rule for RICO claims and that in doing so, it was influenced by the "practicalities of litigation" of RICO claims.[51]   But, the Court pointed out, claims under WARN are based on an act or acts at a single site and, unlike RICO violations, "do not 'commonly involve interstate transactions.'"[52]   The Court concluded by holding that because WARN did not share the "multistate nature" of RICO and is

> so relatively simple and narrow in its scope, that "no [comparable] practicalities of litigation compel us to search beyond state law for a more analogous statute of limitations[.]"   Since, then, a state counterpart provides a limitations period without frustrating consequences, it is simply beside the point that even a perfectly good federal analogue exists.[53]

Although the Supreme Court has not yet determined the applicable limitations period for claims under the FCA, the Third, Fifth, and Ninth Circuits have reached the issue.  The Fifth Circuit held that the limitations period from the

---

[50]*Id.* at 36, 115 S. Ct. at 1932.

[51]*Id.*

[52]*Id.* at 36–37, 115 S. Ct. at 1932.

[53]*Id.* at 37, 115 S. Ct. at 1932 (citations omitted).

12

federal Copyright Act applies to civil actions under the FCA.[54] In *Prostar*, the Fifth Circuit considered whether to apply a Louisiana limitations period to claims brought under 47 U.S.C. §§ 553 and 605.[55] The court concluded that the closest analogue under Louisiana law to the plaintiff's cable piracy claim was the tort of conversion.[56] The court declined, however, to apply Louisiana's one-year limitations period for conversion claims. Instead, emphasizing the need for national uniformity in enforcing the FCA, the court held that the application of Louisiana conversion law would undermine the implementation of the FCA because "[t]he application of state conversion law in each of the fifty states would result in widely varying limitations periods," which would require national cable companies to "'make fifty separate decisions' in their efforts to investigate and pursue cable policy."[57] Thus, the court appeared to interpret the "uniformity" consideration set out by the Supreme Court as a consideration of whether implementation of the cable piracy statutes' policies and the practicalities of litigation required a limitations period that was uniform *across* jurisdictions, rather than merely uniform *within* a jurisdiction. The court concluded that a single federal standard should apply to cable piracy claims and that the federal

---

[54]*Prostar*, 239 F.3d at 677.

[55]*Id.* at 671.

[56]*Id.* at 675.

[57]*Id.* at 676–77.

13

Copyright Act provides an appropriate federal law analogue to such claims.[58]

Accordingly, the court applied the Copyright Act's limitations period of three years to the cable piracy claims.[59]

Both the Third and Ninth Circuits reached a different conclusion than the Fifth Circuit did in *Prostar* and held that the applicable limitations period should be one borrowed from state law. In *Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.*,[60] the Third Circuit noted that Pennsylvania, the state in which the claims were brought, has a cable piracy statute similar to the federal statute; that statute has a two-year statute of limitations.[61] Although the plaintiff in that case argued that the three-year limitations period of the federal Copyright Act should apply, the Third Circuit determined that no special considerations relevant to bringing FCA claims would be frustrated by a two-year limitations period.[62] The court observed that "[t]he overall purpose of the FCA is to "'regulat[e] interstate and foreign commerce in communication by wire and radio so as to make available . . . to all the people of the United States . . . a rapid efficient . . . communication service with adequate facilities at reasonable charges[,]'" and that the specific provisions of §§ 553 and 605 were passed "to prevent unauthorized

---

[58]*Id.* at 677.

[59]*Id.* at 678.

[60]366 F.3d 217 (3rd Cir. 2004).

[61]*Id.* at 219.

[62]*Id.* at 225.

interception of cable transmissions, including interception through unauthorized use of decoding devices."[63]   Because there was no evidence that the practicalities of litigation under those sections required a longer statute of limitations, and because the application of the state law limitations period did not frustrate the purpose or implementation of the FCA, the court found no reason to apply a longer limitations period.[64]

In *DirecTV, Inc. v. Webb*,[65] the Ninth Circuit determined the statute of limitations for a violation of 47 U.S.C. § 605.  The court pointed out that California has a piracy statute "remarkably similar to § 605 in purpose and structure."[66]  In contrast to the Fifth Circuit's analysis in *Prostar*, the court held that the consideration of a need for uniformity does not refer to "a litigant's preference for a single limitations period in multiple lawsuits across multiple jurisdictions."[67]  Nor does the consideration relate to whether the borrowed limitations period should come from federal rather than state law.[68]  Rather, the issue of uniformity arises when the federal cause of action is so complex that "a single state limitations

[63]*Id.* (quoting 47 U.S.C. § 151).

[64]*Id.*

[65]545 F.3d 837 (9th Cir. 2008).

[66]*Id.* at 848 (citing *Lampf*, 501 U.S. at 358, 111 S. Ct. at 2779 (instructing that "commonality of purpose and similarity of elements" are relevant considerations when selecting a statute of limitations period to apply)).

[67]*Id.* at 850–51.

[68]*Id.* at 851.

period may not be consistently applied within a [single] jurisdiction."[69]  The court also noted that, in that case, the piracy claims against the defendant were not multistate in nature in that they did not stem from predicate acts spanning multiple jurisdictions.[70]  And furthermore, the court held, "[G]eographic considerations do not counsel for the adoption of a federal limitations period *less* analogous than a state counterpart."[71]  Thus, the court concluded that the statute of limitations applicable to the California cable piracy statute should apply to the plaintiff's claims.[72]

*Analysis*

We now turn to the claims in this case.  J&J Sports argues that this court should follow *Prostar*.  Precedent of the Fifth Circuit, though persuasive, is not binding on this court.[73]  We therefore conduct our own analysis to determine what limitations period applies.[74]

J&J Sports contends that Texas does not have a state statute analogous to the FCA's statutory scheme protecting against unauthorized reception of cable transmissions.  J&J Sports is incorrect; unlike Louisiana, Texas has a closer

---

[69]*Id.* (citing *Lampf*, 501 U.S. at 357, 111 S. Ct. at 2779).

[70]*Id.*

[71]*Id.*

[72]*Id.* at 848.

[73]*Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

[74]*See Fielding*, 289 S.W.3d at 848 (reviewing summary judgment de novo).

16

analogue to the federal cable piracy statutes than common law conversion. As with the federal provisions at issue here, Texas provides for both criminal and civil liability when a person uses a device to obtain cable or satellite services without authorization. Under section 31.12 of the penal code, a person commits an offense of theft of or tampering with multichannel video or information services if the person, without authorization, intentionally or knowingly uses an unauthorized access device to obtain services from a multichannel video or information services provider.[75] The term "access device" means "an access device, connection, or device wholly or partly designed to make intelligible an encrypted, encoded, scrambled, or other nonstandard signal carried by a multichannel video or information services provider."[76] The term "multichannel video or information services provider" means "a licensed cable television system, video dialtone system, multichannel multipoint distribution services system, direct broadcast satellite system, or other system providing video or information services that are distributed by cable, wire, radio frequency, or other media."[77] With respect to civil liability for such actions, the Texas Theft Liability Act (TTLA) makes certain theft offenses subject to civil penalties as well.[78]

---

[75]Tex. Penal Code Ann. § 31.12(a)(4) (Vernon 2003).

[76]*Id.* § 31.12(b)(1).

[77]*Id.* § 31.12(b)(3).

[78]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–.005 (Vernon 2005).

Section 134.002 specifically provides for a civil cause of action against a person who commits an offense under section 31.12.[79]  As with 47 U.S.C. §§ 553 and 605, under the TTLA, a plaintiff may recover both actual damages and statutory damages for a violation of section 31.12.[80]  Thus, Texas has a state law analogue that parallels the federal cable piracy statutory scheme.  We must now determine whether we should apply the Texas limitations period applicable to section 134.002 to J&J Sports's federal claims or whether we should instead borrow from a federal law analogue.

We agree with the reasoning of the Third and Ninth Circuits.  The federal Copyright Act does not truly afford a closer fit to the federal cable piracy statute than the Texas cable piracy statutory scheme.  And the practicalities of litigation under the cable piracy statute do not make the application of the federal Copyright Act (or any other federal law) significantly more appropriate.[81]  The cable piracy statutory scheme does not address a range of topics and subtopics. It does not base liability on multiple acts, each with its own limitations period, creating confusion as to which limitations period should be applied.  And the predicate act or acts that subject a person to liability do not occur across multiple

---

[79]*Id.* § 134.002.

[80]*See id.* § 134.005(a)(1); *see also* 47 U.S.C.A. §§ 553(c)(3), 605(e)(3)(C).

[81]*See Lampf*, 501 U.S. at 356, 111 S. Ct. at 2778 (noting that a court should apply a federal rule only when federal policies at stake and practicalities of litigation make that rule significantly more appropriate than borrowing a limitations period from an analogous state law).

jurisdictions. Instead, the piracy claims are based on "a localized violation in a single jurisdiction."[82]

Furthermore, borrowing Texas's two-year statute of limitations does not frustrate either the purpose or the implementation of the FCA's cable piracy provisions. We agree with the Third Circuit that having a two-year statute of limitations does not impede the FCA's purpose of preventing the unauthorized interception of cable transmissions, including interception through unauthorized use of decoding devices.[83] Because the federal policies at stake are not frustrated by applying a two-year statute of limitations, and because the practicalities of litigation under the FCA's cable piracy provisions do not counsel against borrowing Texas's two-year statute of limitations, we decline to follow *Prostar*.

J&J Sports argues that cable piracy "clearly implicates several areas of the law, such [as] fraud, theft of services, conspiracy to breach contract, unjust enrichment, or interference with economic advantage." But whereas cable piracy could possibly be compared to any of these causes of action, proving a claim under the cable piracy statutory scheme does not require establishing those

---

[82] *See DirecTV, Inc.*, 545 F.3d at 851.

[83] *See Kingvision Pay-Per-View, Corp.*, 366 F.3d at 225.

19

other claims. The fact that those other causes of action have varying statutes of limitations is therefore irrelevant to our analysis.[84]

J&J Sports also argues that cable signals and satellite communications are multistate operations. It points out that it is a California corporation with an exclusive license with a Nevada-based promoter and that the defendants in this case were in Texas. J&J Sports misconstrues the geographic consideration requirement set out by the Supreme Court.[85] The "multistate nature" of a claim does not refer to whether the parties are in different jurisdictions. The consideration relates to whether the predicate acts of the defendant occurred in different jurisdictions.[86] J&J Sports's claim is based, as most cable piracy claims will be, on an act at a single site. And the Supreme Court has pointed out that even if the claim is multistate in nature, before borrowing a federal limitations period, a court must determine that an analogous federal source *truly* affords a closer fit with the cause of action at issue than does any available state-law

---

[84]*Cf. Agency Holding*, 483 U.S. at 149–50, 107 S. Ct. at 2763–64 (discussing RICO, which lists more than thirty acts or offenses and makes the commission of any two a violation of RICO).

[85]*See Prostar*, 239 F.3d at 676 (determining that Prostar's claim illustrated the "multistate nature" of FCA actions in that Prostar was a Texas corporation suing for signal piracy conducted in Louisiana).

[86]*See North Star Steel*, 515 U.S. at 37, 115 S. Ct. at 1932 (noting that WARN's obligations are triggered by activities that, unlike RICO violations, "do not 'commonly involve interstate transactions'").

source.[87]  The federal Copyright Act does not afford a closer fit to the federal cable piracy statutes than does the Texas cable piracy statutes.

Section 134.002 of the civil practice and remedies code, which incorporates section 31.12 of the penal code, is the Texas statute most closely analogous to the cable piracy provisions of the FCA.  Accordingly, we hold that the statute of limitations applicable to section 134.002 applies to the federal causes of action asserted here.  Under section 16.003(a) of the civil practice and remedies code, except where otherwise provided, a two-year limitations period applies to a claim for trespass to or the taking of personal property.[88]  Because section 134.002 addresses theft of personal (intangible) property, section 16.003(a) applies to section 134.002 claims.  Accordingly, we hold that a two-year statute of limitations applies here.

J&J Sports brought its claims more than two years after the alleged unauthorized interception.  The trial court therefore did not err by granting JWJ and Feemster's cross-motion for summary judgment based on the application of the two-year statute of limitations in section 16.003(a).[89]  We overrule J&J Sports's sole issue.

---

[87]*Lampf*, 501 U.S. at 357–58, 111 S. Ct. at 2779.

[88]Tex. Civ. Prac. & Rem. Code Ann. § 16.003.

[89]*See Chau*, 254 S.W.3d at 455.

## IV.  Conclusion

Having overruled J&J Sports's sole issue, we affirm the trial court's summary judgment.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

DELIVERED:  September 23, 2010